CONROW, APPELLANT, *v.* HUFFINE ET AL., RESPONDENTS.

(No. 3,342.)

(Submitted January 6, 1914.  Decided January 26, 1914.)

[138 Pac. 1094.]

*Water Rights—Extent of Right—Duty of Water—Estoppel—*
*Pleading—Waiver—Implied Findings—Record on Appeal—*
*Bills of Exception.*

Water Rights—Implied Findings.
1.  In a water right suit the presumption will be indulged, under the doctrine of implied findings, that the court found in favor of the prevailing party upon all the issues not covered by the express findings.

Same—Extent of Right—How Measured.
2.  While, as between claimants under prior and subsequent appropriations of water, the extent of the right of the first appropriator is measured by the capacity of his original ditch, the necessity for the use, and not the size of the ditch, is the measure of the extent of the right after the use has been installed and the capacity of the ditch exceeds the amount required for reasonable use.

[As to appropriation of water for irrigation purposes, see notes in 98 Am. Dec. 542; 20 Am. St. Rep. 225.  As to what constitutes an appropriation of water, see note in 60 Am. St. Rep. 799.]

Same—Duty of Water—Rule.
3.  In the absence of legislative declaration on the subject, the rule in fixing the amount of water required for economical use for purposes of irrigation is to allow one inch per acre, unless the evidence discloses that a greater or less amount is required.

Same—Allowance of Water—Convenience—Immaterial Consideration.
4.  That a larger allowance of water than one inch per acre would more readily and conveniently enable a party to accomplish his work of irrigation is not any reason for making a larger award.

Same—Acquisition of Rights—Extent, How Measured.
    5. The extent of a right to the use of water acquired by purchase or otherwise is dependent upon the extent of the right at the time of its acquisition.
Estoppel—Pleading—Waiver.
    6. Unless conduct claimed as an estoppel is pleaded as such, it will be held to have been waived.
Findings—Evidence—Sufficiency—Review—Bill of Exceptions.
    7. The sufficiency of the evidence to justify findings in a water right suit may be raised on motion for a new trial and reviewed on appeal without formal exceptions, the law (Rev. Codes, sec. 6784) reserving an exception for that purpose; hence a formal bill of exceptions was not required.

*Appeal from District Court, Gallatin County; J. M. Clements, a Judge of the First Judicial District, presiding.*

ACTION by S. H. Conrow against Franz Huffine and others. Decree for defendants, and plaintiff appeals. Remanded, with directions.

*Mr. Walter Aitken,* for Appellant, submitted a brief and argued the cause orally.

After diligent search and study we have been unable to find any specific declaration of this court as to the duty of water in any given instance. General rules have been laid down in many cases by which this court has recognized the principle that need is the basis of right, and that need is a matter of evidence. However, in *Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396, it seems to have been decided that fifty inches of water is sufficient to irrigate twenty-five acres of land, the opinion not disclosing that there was any evidence as to the needs of the land, and the court apparently basing its decision on common knowledge. That decision was rendered more than thirteen years ago. And in the recent case of *Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575, the rule is laid down that ''the appropriator's need and facilities, if equal, measure the extent of his appropriation. If his needs exceed the capacity of his means of diversion, then the capacity of his ditch, *etc.,* measures the extent of his right. If the capacity of his ditch exceeds his needs, then his needs measure the limit of his appropriation.''

In the case at bar the capacity of the ditch supplying the Moore place is far greater than the need for water of the land covered. Hence, need is the measure of the right. All of the testimony in the record except Mr. Gee's is to the effect that an inch to the acre is sufficient for this land, provided one has sufficient to make an irrigating head, and this court seems to have recognized this as a general fact of common knowledge in *Toohey* v. *Campbell,* above, that fifty inches is an irrigating head and if this was true thirteen years ago it is, for a greater reason, true now, under the improved systems of irrigation, and the need for economy in the use of water under greatly increased demand. To warrant any greater award the need must be exceptional and established by specific, abundant, clear and convincing proof. The decided preponderance of the evidence negatives any such exceptional need in the case at bar. In other jurisdictions there is abundant and specific authority for limiting irrigation rights to actual need measured by rules established from long experience, and the tendency everywhere is to frown upon and discourage wasteful methods of irrigation. "Advance in methods of irrigation, and increase in number of users, must be considered in deciding the requirement for beneficial use, and thereby the extent of the appropriation." (1 Wiel on Water Rights, 3d ed., 510; *Hough* v. *Porter,* 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728; *Farmers' Co-operative Ditch Co.* v. *Riverside Irrigation Dist.,* 16 Idaho, 525, 102 Pac. 481; *Larimer County Canal etc. Co.* v. *Poudre Valley R. Co.,* 23 Colo. App. 249, 129 Pac. 248.)

Mr. *John A. Luce,* and Mr. *George D. Pease,* for Respondents, submitted a brief; Mr. *Luce* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to have determined the extent of the respective rights of the plaintiff and the defendants to the use of the water flowing in Bear creek, in Gallatin county, and the

order of their priorities.   The stream is formed by two branches, which are referred to in the pleadings and evidence as the east and west forks.   The former has its source in the northeast quarter of section 28, township 2 north, range 5 east, and the latter in the southeast quarter of section 21, same township and range.   After flowing south through section 33, the branches unite in section 4, township 1 north, range 5 east, forming the main stream, which flows thence toward the southwest through sections, 5, 8 and 7.   The defendants Gervais, Merritt, Ballard, and Brownell, though served with summons, did not appear. Plaintiff is the owner of sections 21 and 28 and at different times has had under irrigation, from Bear creek and other sources, about sixty-eight acres, consisting of the areas of lowlands lying along both branches of the stream.   The lands owned by the defendant Gee consist of 200 acres, lying in sections 33 and 4 above the junction of the two branches.   Not more than sixty-five acres of them are susceptible of irrigation from Bear creek.   At the time of the trial the area under irrigation was about forty-five acres.   Defendant Beckhorn owns about eighty acres, lying partly above and partly below the junction.   At the time of the trial he had under irrigation from Bear creek about nine acres, though there is an additional area of twenty acres susceptible of irrigation, when he has a sufficient supply of water.   The defendant Huffine's lands lie on both sides of the main stream below the junction, in sections 7 and 8.   The areas under irrigation by him at the time of the trial covered about fifty-six and a half acres.   The plaintiff claims the right to the use of 100 inches, appropriated and diverted by his predecessors or himself from the two branches at different times from October 1, 1877, to July 1, 1885.   The defendant Huffine dates his right from May 1, 1868.   The appropriation under which he claims, and which is referred to in the record as the Moore right, was made by the construction of a ditch on the east bank of the main stream in May, 1868, by a predecessor who had made settlement upon a portion of the lands now owned by this defendant.   The water was first diverted and used to irrigate lands on the east

side of the stream. In all there were about thirty-six acres, including an area of a little more than fourteen acres, which is not now owned by Huffine. Subsequently, but prior to the spring of 1878, the exact date not being disclosed, a second ditch was taken out on the west side by a mesne grantee of the original appropriator. This was used to convey water to all the irrigable lands now owned by Huffine on the west side, amounting approximately to thirty-four acres. The defendants Gee and Beckhorn claim under the same appropriation, alleging interests therein by mesne conveyances from the original appropriator. They also claim under other appropriations made by themselves on July 1, 1885. At the trial the plaintiff conceded the priority of defendants' rights, so far as they appeared to have been derived from the Moore right, and there is a present necessary use for the water diverted by it, but endeavored to show that the actual necessity served by this right at any time prior to plaintiff's oldest appropriation required a much smaller amount than the defendants claimed. The court made special findings of the amounts and dates of all the respective claims and entered a decree accordingly. It found that the appropriation of May 1, 1868, amounted to ninety inches; that the defendants are the owners of this right in undivided interests as tenants in common, Huffine having one-half, Gee one-third, and Beckhorn one-sixth; and that they are entitled to use, respectively, forty-five, thirty and fifteen inches. The plaintiff has appealed from the decree and an order denying his motion for a new trial.

No complaint is made of the findings touching the claims of any of the parties other than those based on the Moore right. As to these, complaint is made that the total amount awarded to the defendants is in excess of that actually needed for their efficient use at the time the appropriation was made, or thereafter, at any time prior to the date of plaintiff's appropriations. Counsel contends that the evidence is insufficient to justify the findings in this regard. Whether this contention has merit is the only question he has submitted for decision.

There is no controversy in the evidence that at ordinary stages during the irrigating season the flow of the stream does not exceed 100 inches. Nor is there any question that the ditch taken out in 1868 diverted substantially the entire flow. The same may be said of the west side ditch. The area irrigated on both sides did not at any time, prior to plaintiff's earlier appropriations, exceed approximately seventy acres. This area was never increased, because it included all the lands susceptible of irrigation from the stream on either side of it. Plaintiff made appropriations in 1878, 1879 and 1882, amounting in all to thirty-five inches. When Huffine acquired his interest in the Moore right does not appear. He never acquired more than an undivided one-half interest. On February 25, 1899, Moore conveyed to one Axtell an undivided one-half interest. This interest was subsequently acquired by the defendants Gee and Beckhorn, the former acquiring an undivided one-third and the latter an undivided one-sixth interest. The findings are silent as to the date of the construction of the ditch on the west side of the stream to utilize the Moore right on the lands on that side. Counsel, therefore, argues that, since this is so, the use of any water on that side under the Moore right was excluded from consideration, and that, while the court properly awarded to defendants the proportionate amounts they are entitled to, the gross amount is too large because the evidence clearly discloses that the Moore right was never used to irrigate to exceed thirty-six acres on the east side. To make the statement in another way: Since under the findings the Moore right should have been limited in amount by the necessity for its use on the lands on the east side only, and, since the extent of the defendants' respective interests must be determined by the extent of this use, the total amount found for all these rights, after making due allowance for a sufficient head to render the use effective, should have been limited to forty or fifty inches. Again he says: Conceding that the total amount of the awards made to the defendants should be limited to the necessary use of the Moore right on both sides of the stream, the award is nevertheless ex-

cessive because it appears without controversy that at no time in the history of the Moore right could there have been actual necessity for the use of more than sixty inches, because all the lands irrigated by it never exceeded, or could have exceeded fifty-six and a half acres; one inch per acre being the average amount required to irrigate any of the lands upon which the water has heretofore been used.

We do not think the silence of the findings touching the west side ditch is to be given the significance claimed by counsel. The court, in finding as it did that Huffine is entitled to the use of forty-five inches, evidently took into consideration the gross amount of land susceptible of irrigation on both sides of the stream; otherwise the finding that the extent of the Moore right was ninety inches cannot be explained. For it may not be supposed that the court entertained the notion that this amount was ever necessary to irrigate the comparatively small area of thirty-six acres on the east side. In any event, under the doc- [1]    trine of implied findings, nothing appearing to require the contrary conclusion, the presumption will be indulged that the court found in favor of the Moore right upon all the issues in this connection not covered by the express findings.    (*Yellowstone Nat. Bank* v. *Gagnon,* 25 Mont. 268, 64 Pac. 664.)    The right to use water on all his irrigable lands on both sides of the stream is alleged affirmatively by Huffine in his answer, and evidence was offered showing that he had necessity for such use.    Under these circumstances, we must presume that the amount found for the Moore right, out of which have been acquired the respective rights of the defendants, was fixed in view of the necessity existing for its use at the time the appropriation was made, including also the subsequent enlargement of the use by the application of it to the lands on the west side of the stream.

"The test of the extent of an appropriation with reference to a subsequent right to the waters of a stream is dependent upon the capacity of the first ditch before such subsequent appropriation is made.    When an owner or possessor of land

makes an appropriation of water in excess of the needs of the particular portion of the land upon which he conveys the water, and other portions of his land also require irrigation, his water right is not limited by the requirements of the particular fraction. He may still, despite the fact that another's water right has attached, construct other ditches through his remaining land, provided that the total amount of water conveyed by all the ditches on his place does not exceed the original capacity of the first ditch. As between his appropriation and the subsequent [2] water right, the capacity of the ditch, by means of which he first made his appropriation, is the test of the extent of it." (*McDonald* v. *Lannen,* 19 Mont. 78, 47 Pac. 648.) Under this rule, the extent of the right of the first appropriator is measured by the capacity of the original ditch. After the use has been installed, however, if the capacity of the ditch exceeds the amount required for reasonable use, the necessity for the use, and not the size of the ditch, is the measure of the extent of the right. (*Toohey* v. *Campbell,* 24 Mont. 13, 60 Pac. 396; *Bailey* v. *Tintinger,* 45 Mont. 154, 122 Pac. 575.) The tendency of recent decisions of the courts in the arid states is to disregard entirely the capacity of the ditch and regard the actual beneficial use, installed within a reasonable time after the appropriation has been made, as the test of the extent of the right. (1 Wiel on Water Rights, sec. 476; *Barrows* v. *Fox,* 98 Cal. 63, 32 Pac. 811; *Roeder* v. *Stein,* 23 Nev. 92, 42 Pac. 867; *Drach* v. *Isola,* 48 Colo. 134, 109 Pac. 748; *Larimer County Canal No. 2 Irr. Co.* v. *Poudre Valley R. Co.,* 23 Colo. App. 249, 129 Pac. 248; *Farmers' Co-op. Ditch Co.* v. *Riverside Irr. Dist.,* 16 Idaho, 525, 102 Pac. 481; *Hough* v. *Porter,* 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 1102, 102 Pac. 728.)

The use of water flowing in the streams of this state is declared by the Constitution to be a public use. (Constitution, Art. III, sec. 15.) The use must be beneficial, and, when the appropriator or his successor ceases to use the water for such purpose, the right ceases. (Rev. Codes, sec. 4841.) If conditions change as time passes, and the necessity for the use diminishes, to the extent of

the lessened necessity the change inures to the benefit of subsequent appropriators having need of the use, for, subject to the rule that ''as between appropriators the one first in time is first in right'' (sec. 4845), the prior appropriator may not divert from the stream more than an amount actually necessary for his use (sec. 4844). While, therefore, the extent of the right cannot in any case exceed the capacity of the means of diversion, the ultimate question in every case is: How much will supply the actual needs of the prior claimant under existing conditions?

As has already been said, the Moore right has never been used to irrigate more than approximately seventy acres, this area embracing all the Huffine lands that can be irrigated. Ordinarily the area to which it has been applied has not exceeded approximately fifty-six acres. This is not controverted; nor is it controverted that the soil of these lands consists of a fine black loam, which ordinarily requires a smaller allowance of water than any other. Touching the amount per acre necessary for effective use, the evidence is not very definite. The defendants testified generally that they had been using the Moore right alternately, and that it has required the entire flow of the stream to irrigate their lands. These statements cannot be accepted as of substantial value, when we remember that Beckhorn has never at any time had under cultivation more than twenty-nine acres. According to the opinion of these witnesses, three inches per acre are required for effective use on Beckhorn's land, and a proportionately large amount per acre on the lands of the other defendants. The only definite statement made on the subject by any witness was that of the plaintiff, who said that, making due allowance for a sufficient head to insure effective irrigation, and considering the character of the soil of Huffine's land, one inch per acre was all that was required. It is not clear whether, in finding the amount of the Moore right, the court accepted the statement of the defendants or made the capacity of the original Moore ditch the measure.

While we have no legislation on the subject, the rule has generally been observed by the courts of this state, in fixing the

[3]    amount required for economical use, to allow one inch per acre, unless the evidence discloses that a greater or less amount is required.    All the witnesses who testified on the subject agreed that fifty or sixty inches furnish a sufficient head for effective working purposes.    If this is true, and one inch per acre is all that is required, the award made by the court was excessive from any point of view, under the circumstances disclosed by the evidence; and, in view of the rule referred to, we think the court should have accepted the statement of plaintiff as the only substantial evidence on the subject.    From this point of view, making the most liberal allowance for the Moore right, the total award should have been fixed at seventy inches, or one inch per acre, for the largest area ever irrigated by it.    That the Beck-
[4, 5]    horn and Gee lands have need for a larger allowance, because of their character or for any other reason, may not be considered as important, because the extent of their rights depends entirely upon the extent of the Moore right at the time they acquired their interests.    While it may be conceded, as all the defendants testified, that the amount awarded by the court would enable them to accomplish their work of irrigation more readily, since one inch per acre must be deemed sufficient for practical purposes for lands of the character for which the appropriation was made, defendants may not claim, or be allowed, a larger allowance merely because it will more conveniently serve their wants.

In 1889 one Axtell was occupying the lands now owned by Beckhorn and Gee.    An action was brought against him by Moore to enjoin him from interfering with the Moore right by diverting water for use on the Beckhorn and Gee lands.    Moore claimed that he was entitled to the exclusive use of all the water in the stream.    Axtell suffered default, and the result was a decree in Moore's favor, adjudging him entitled to the relief demanded.    In the present action Moore, who testified for the defendants, stated that, prior to the bringing of that action, he saw the plaintiff and told him that he (Moore) was disposed to make him a defendant; that plaintiff thereupon told him that

he should not do so, for the reason that plaintiff put more water into Bear creek than he took out; and that for this reason plaintiff was not made a defendant. The witness explained that plaintiff's claim was that by allowing a sufficient volume of waste water to flow into the east branch of Bear creek from a ditch used by him to divert water from Cottonwood creek, which lies some distance to the east, to maintain undiminished the volume of water flowing to the head of Moore's ditch, he was not interfering with Moore's right. The plaintiff denied that this conversation ever occurred. Counsel for defendants contend that by his failure at that time to assert a right to divert and use water from Bear creek, and by his acquiescence in the result of the action since that time, plaintiff is estopped to question the extent of Moore's right. That the plaintiff is not to be held bound by the judgment is clear, because he was not a party to it. (Rev. Codes, sec. 7914.) If it be conceded that his conduct [6] was such as to estop him, the defendants did not plead it as an estoppel, and hence must be held to have waived their right to rely on it. (8 Cyc. Pl. & Pr. 10, 13.)

Counsel also contend that the findings are not properly before the court for review, because plaintiff did not have a formal bill of exceptions settled under the provisions of sections 6767 and 6768 of the Revised Codes. These provisions point out the procedure to be observed in preparing bills of exceptions when the court refuses to remedy defects in the findings upon application made in that behalf. The findings as made constitute a part of the judgment-roll (section 6806), and the sufficiency of the evidence to justify them may be questioned on the motion for a new trial, and reviewed by this court on appeal, without formal [7] exceptions, the same as the verdict of a jury. For this purpose the law reserves an exception, and no formal bill of exceptions is required. (Rev. Codes, sec. 6784.) Sections 6767 and 6768 have no application.

The cause is remanded to the district court, with directions to set aside the decree heretofore entered, to amend the finding as to the amount of the Moore right by fixing it at seventy inches,

to award to each of the defendants his undivided interest in this amount, and to enter a decree accordingly. Each party will pay his own costs.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.