[Sac. No. 4180. In Bank.—July 15, 1929.]

ALICE WITHERILL, Executrix, etc., Respondent, v.
A. BREHM et al., Appellants.

J. W. McCaughey and Vincent Surr for Appellants.

No appearance for Respondent.

CURTIS, J.—This is the second appeal taken in this action; the opinion in the first appeal is to be found in 74 Cal. App. 286 [240 Pac. 529]. At the first trial of this action by the judgment of the court the plaintiff was awarded a perpetual flow of seventy-five inches of water measured under a four-inch pressure of the waters of Grouse Creek in Siskiyou County. Upon appeal the defendants made the following claims: (1) That their riparian rights were superior to the adverse title of plaintiff; (2) That the sources of water rights claimed by plaintiff are within the grant of railroad lands from the United States to the Central Pacific Railroad Company; (3) That adverse possession on the part of the plaintiff has not been established; (4) That seventy-five inches of water under four-inch pressure is excessive for the necessary use of the plaintiff; (5) That costs were improperly taxed against defendants, and (6) That defendants were prejudiced by the continuation of their motion for a new trial to a time when it would be automatically denied.

The appellate court on said first appeal considered all of the foregoing claims of the defendants and determined all of them in favor of the plaintiff except number 4, and as to said last-mentioned claim it held that the amount of water allowed the plaintiff in the judgment rendered at the first trial of this action was excessive. It accordingly made the following order: "For the reason that the judgment allows an excessive quantity of water and that it is not confined to those months during which it was actually and necessarily used for beneficial purposes, the cause must be remanded. The judgment is therefore reversed." At the second trial the issues were confined to the amount of water actually and necessarily used by the plaintiff and to the time or months of the year of said user. The trial court on the

second trial fixed the amount of water to which the plaintiff was entitled at fifty inches, measured under a four-inch pressure, during the irrigating season commencing April 1st and ending October 15th of each year, and at five inches, measured under a four-inch pressure, during the remaining portion of the year. From this judgment the defendants have appealed and in due time served and filed their opening brief. The plaintiff and respondent has made no appearance in this court, and has not filed any brief or points and authorities, nor in any other manner assisted the court in the determination of the questions raised by the appellants in their brief. This has made it necessary for this court to carefully go over and examine the entire record herein, which we have done.

The sum and substance of appellants' contention on their present appeal is that the evidence does not support the findings in regard to the amount of water actually and necessarily used by the respondent for beneficial purposes, or, in other words, the appellants contend that the amount of water allowed the respondent in the judgment rendered at the second trial of said action is excessive, and unwarranted by the evidence in the case.

The decree of the court, based upon proper and sufficient findings, is "that plaintiff is the owner of, and entitled to the prior right to divert, 50 inches of the first flow of the waters of Grouse Creek situated in Siskiyou County, California, said 50 inches to be measured under a 4″ pressure at the point of diversion on said Grouse Creek." From the point of diversion mentioned in said findings the waters of said stream are conducted in an open ditch a distance of two and one-half miles to respondent's land and premises through a porous formation, and the court found upon evidence unquestionably sufficient to support said finding "that approximately two-fifths of the amount of water diverted from Grouse Creek at the head of plaintiff's ditch is lost in transit by seepage and evaporation." The effect of this loss by seepage and evaporation would be that respondent would receive of the fifty inches allowed to be diverted from the stream only thirty inches for use upon her said premises. As to the five inches of water allowed by the judgment to plaintiff during the nonirrigating period of each year, said judgment provides that respondent is the owner and en-

titled "to the prior right to divert five inches, measured under a 4″ pressure at the point of user thereof near the buildings of plaintiff on her said land during the period of each year commencing on October 15th of each year and ending on April 1st of the next succeeding year." There is no contention on appellants' part that the judgment in respect to this quantity of water allowed the respondent is erroneous or is not supported by sufficient evidence. In fact, the appellants stipulated in open court that respondent should be allowed for this period of the year five inches of water delivered at the ranch. It appears, therefore, from the record that this amount of water was by agreement awarded to the respondent for nonirrigating purposes, such as domestic use, watering stock and other similar purposes. This amount of water for domestic use would, of course, be required during the irrigating season as well as during the balance of the year. It should not, therefore, be included in the amount awarded for irrigation purposes. As the judgment awards the respondent what amounts to thirty inches of water delivered on the premises for all purposes during the irrigating season, to ascertain the amount awarded for irrigating purposes, this five inches should be deducted from the thirty inches so awarded. This would leave of the thirty inches of water which, after loss by seepage and evaporation, finally reached respondent's premises, twenty-five inches of water for irrigating purposes upon respondent's said lands. There is some dispute as to the extent of respondent's lands upon which the waters of said stream are and have been used for irrigating purposes. Appellants claim that these lands in no event exceed 14.30 acres. They contend, however, that the lands which are actually irrigated by said water are much less in extent than fourteen acres. On the other hand, there is evidence that at least twenty acres of respondent's lands have been regularly and beneficially irrigated by the water of Grouse Creek, and some witnesses place the amount of such land far in excess of the last-mentioned amount. The court found "that not more than twenty acres of plaintiff's lands are actually irrigated by the waters from Grouse Creek, but that the lands thus irrigated by plaintiff are to (so) situated, and being adjacent to the east fork of Scott river, and are so overlaid with large boulders and gravel, and overlaid with but a small coating of earth, that such

578

land is very pervious when water is applied thereon . . . and that an unusual amount of water is required to irrigate said lands.'' The court further found ''that allowing for seepage, such quantity of water (50 inches measured under a four-inch pressure at the point of diversion) has actually, necessarily and beneficially been applied to and used by plaintiff and her predecessors in interest for irrigation and domestic purposes on the said lands described in plaintiff's complaint, and that said quantity of water is necessary to actually and beneficially irrigate plaintiff's said lands owing to the extraordinary, pervious condition and formation of said land.''

While the evidence is conflicting as to the extent of respondent's land actually irrigated by the waters of Grouse Creek, it is undoubtedly sufficient to show that substantially twenty acres of said land had been so irrigated, and this we understand to be the purport and meaning of the finding of the court upon this subject.

We are thus brought to the question as to whether the allowance of twenty-five inches of water, under a four-inch pressure, for twenty acres of land of the kind and character of respondent's land, as found by the court, is an excessive allowance of water for said land. The evidence as to the character and formation of respondent's land and that it requires an unusual amount of water for irrigating purposes in order to successfully produce crops thereon is practically undisputed. It is not necessary to give any extended *résumé* of the evidence upon this issue. We will mention, however, the testimony of one of the appellants' principal witnesses, John A. Beemer, an engineer, who visited the land of plaintiff and made tests of its soil for the purpose of determining the amount of water necessary to beneficially irrigate the same. This witness, after testifying of his visit to respondent's land and of his testing the soil thereof, stated: ''That I would regard as porous soil. It is soil that takes a large amount of water. It takes more water than the average. . . . I would place the duty on that land as one miner's inch per acre . . . I expect I have seen instances when more than that was used, but not beneficially.'' In other words, this witness testified that in his opinion respondent's land required the maximum amount of water applied to it for irrigation purposes in order to successfully

produce crops thereon. On the part of respondent, a witness by the name of J. B. Parker testified that it would take from seventy-five to one hundred inches of water to irrigate the land of respondent. This witness testified that he had known said land and the ditch conveying water thereto from Grouse Creek practically as long as he could remember; that he was seventy-one years of age and had lived in the vicinity of the Witherill ranch during all of his life; that said ranch had been irrigated by the waters of Grouse Creek since 1865; that the ditch from Grouse Creek to respondent's said lands would now carry 150 inches of water. He further testified as to the character and formation of the soil upon said lands and his testimony on that subject coincided with the evidence of Mr. Beemer above referred to. The evidence also shows that the witness had been extensively engaged in farming and in the irrigation of lands in the immediate vicinity of the Witherill ranch during the greater part of his lifetime. Undoubtedly the testimony of this witness had great weight with the trial judge, and we think it was well that it should. He was a practical farmer and irrigationist and he testified from his long experience and thorough knowledge of the lands of respondent and others in that vicinity, and of the amount of water required to properly and beneficially irrigate the same. His testimony alone is sufficient to support the finding of the court as to the amount of water necessary for the proper and beneficial irrigation of respondent's lands. While his estimate of the amount of plaintiff's land which had been irrigated from the waters of Grouse Creek exceeded somewhat that given by the witnesses for the appellants, his testimony as to the amount of water per acre required by said land did not greatly differ from that of appellants' witness Beemer, which has already been referred to. On the whole, we think the finding of the court as to the amount of water required for the proper and beneficial irrigation of respondent's lands finds substantial support in the evidence.

▮ Appellants' further contention that the courts have seldom, if ever, allowed more than one miner's inch of water per acre for irrigating purposes is best answered by reference to a recent case decided by this court in which a judgment allowing two and one-half miner's inches per acre was sustained. (*Joerger* v. *Pacific Gas & Elec. Co. (Mt. Shasta Power Corp.), ante,* p. 8 [276 Pac. 1017].) ▮ Appel-

lants also complain of the diversion ditch of respondent and contend that the use of the same in the manner in which the respondent conducts waters through the same is wasteful of the said waters. This question is also discussed by this court in the case just mentioned. Quoting from page 22 this court said: "Defendants assert that an examination of all the California cases will reveal the fact that no decree has ever been upheld awarding more than one miner's inch per acre. This may be true and yet such circumstance is not controlling, for this court cannot fix a limit beyond which a trial court may or may not go, or say as a matter of law, that the amount allowed is excessive irrespective of the evidence. As above stated, the amount of water necessary for beneficial use is a question of fact in each particular case. (1 Wiel on Water Rights, 523.) The question is not to be determined by rule but rather by the evidence presented to the court or jury. In passing, it may be said that in the ascertainment of this fact, long continued use of a given quantity of water by appropriation may raise a presumption of necessary and beneficial use, for it is not reasonable to suppose that one would destroy or impair the value of his land by the use of an excessive amount. (*California Pastoral Co.* v. *Madera Irr. Co.*, 167 Cal. 78 [138 Pac. 718]; *Campbell* v. *Ingraham*, 37 Cal. App. 728 [174 Pac. 366]; *Stinson Canal Co.* v. *Lemoore Canal & Irr. Co.*, 45 Cal. App. 242 [188 Pac. 77].) Nor is there merit in the claim that the method employed by plaintiff in diverting the water is unauthorized. While an appropriator can claim only the amount which is necessary to properly supply his needs, and can permit no water to go to waste, he is not bound, as here claimed, to adopt the best method for utilizing the water or take extraordinary precautions to prevent waste. He is entitled to make a reasonable use of the water according to the custom of the locality and as long as he does so, other persons cannot complain of his acts. The amount of water required to irrigate his lands should, therefore, be determined by reference to the system used, although it may result in some waste which might be avoided by the adoption of another or more elaborate and extensive distribution system. (Farnham on Waters, sec. 675; Wiel on Water Rights, 3d ed., sec. 481; *Barrows* v. *Fox*, 98 Cal. 63 [32 Pac. 811].)"

■ Appellants have much to say in their brief regarding the carrying capacity of respondent's diversion ditch, and of certain measurements made of the water flowing in said ditch by A. F. Parrott, county surveyor of the county of Siskiyou. This witness testified that he made three measurements of said ditch on September 29, 1926. This action was tried in October of that year. These measurements, according to said witness, were made one at a point 250 feet below the headgate of said ditch which showed twenty-one inches of water flowing in said ditch at said point of measurement; the second, a mile and one-quarter below the point of diversion, which showed seventeen and one-half inches of water flowing in said ditch; and the third at a point between 400 and 500 feet from the point of delivery which showed fifteen and one-half inches of water flowing in said ditch. The witness Parrott testified that the water in the ditch at one point where he made the examination was within two inches of the top of the ditch and that the carrying capacity of the ditch at that point was not over thirty miner's inches of water. The point which appellants seek to make from this testimony is that the carrying capacity of the ditch was only thirty inches. This evidence standing alone might sustain appellant's point. But there is other evidence in the record which must be considered by an appellate court in reviewing the judgment of the trial court. This evidence consists of testimony given by respondent's witnesses as to the capacity of said ditch. One of these witnesses stated that after the rendition of the first judgment in this action he put a new headgate in Grouse Creek, where respondent's ditch diverts the water therefrom, and that this headgate was fifteen inches wide and was so constructed as to divert seventy-five inches of water from said creek into said ditch— that amount having been allowed by the trial court in its first decision in this action. This same witness testifying as to the capacity of said ditch said, "That ditch carried 150 inches of water for years and years and would carry it right now if it was turned into it." He further testified, "The ditch as I know it is something like 12 inches wide and 10 or 12 inches deep. I think there are places a little narrower than that. In the narrower places it is always swifter." It was for the trial court to reconcile the conflicting testimony of the several witnesses in the case, and in

doing so it expressly found that the capacity of the ditch was sufficient to carry the amount of water allotted by the decree herein to respondent. The measurements made by Mr. Parrott, the county surveyor, were taken near the end of the irrigation season, when the ditch may have become filled with sand and gravel accumulated during the previous months. After a consideration of all the evidence in the case we are satisfied with the conclusion reached by the court in regard to the amount of water which the respondent herein is entitled to divert from Grouse Creek for use upon her said lands and premises. The judgment therefore is affirmed.

Preston, J., Langdon, J., Shenk, J., Richards, J., Seawell, J., and Waste, C. J., concurred.