WORDEN, Respondent, *v.* ALEXANDER et al., Respond-
ents; MACLAY et al., Appellants.

(No. 7,780.)

(Submitted January 26, 1939.   Decided April 24, 1939.)

[90 Pac. (2d) 160.]

*Messrs. Pope, Smith & Smith,* for Appellants, submitted an original and a reply brief; *Mr. Walter E. Pope* and *Mr. Russell E. Smith,* argued the case orally.

*Mr. Donovan Worden, Mr. E. C. Mulroney,* and *Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. Mulroney, Mr. Harry Pauly* and *Mr. E. C. Kurtz,* argued the cause orally.

HONORABLE W. L. FORD, District Judge, sitting in place of MR. CHIEF JUSTICE JOHNSON, disqualified, delivered the opinion of the court.

This was an action brought for the purpose of procuring an adjudication of the water rights of the plaintiff and the defendants to the waters of Lolo Creek and its tributaries located in Missoula county, and the defendants D. R. Maclay, Holmes Maclay, Samuel S. Maclay, David J. Maclay, Helen Maclay Schroeder, and John Schroeder have appealed from the decree adjudicating such rights.

The case was originally tried before Honorable Theodore Lentz, who heard all the evidence in the cause but died before filing findings of fact and entering decree. Thereafter plaintiff moved that Honorable Albert Besancon, the successor to Judge Lentz, assume jurisdiction of the case and make findings of fact and conclusions of law and render a decree, upon the testimony introduced before Judge Lentz; and upon the hearing of the motion the appellants herein made no objection to Judge Besancon deciding the case upon the record made before Judge Lentz, but on the contrary suggested that a stipulation be entered into that he might do so. Thereafter Judge Besancon made findings of fact and conclusions of law upon the testimony taken before Judge Lentz, and entered decree thereon.

There are but two questions raised by appellants on this appeal:

1. Is the decree erroneous in respect to the amounts of water awarded the various parties?

2. Did the court err in allowing Marie Thayer a 1903 instead of a 1907 right?

While the appellants do not complain of the manner in which Judge Besancon assumed jurisdiction of the case and rendered his decision thereon, yet they contend that his decree is subject to review without the usual presumptions which govern in a case where the findings are based upon conflicting evidence; on the other hand, the respondents contend that by the manner in which the case was submitted to Judge Besancon the appellants waived their right to insist upon a new trial, and that they should not be permitted to complain at this stage, and that Judge Besancon's findings should be accorded the same full force and effect as though he had presided at the trial.

While there is some conflict in the authorities, the decided weight of authority is that when the trial judge to whom the case has been submitted upon evidence introduced before him dies before making findings of fact, his successor has no authority to make findings of fact and conclusions of law without the consent of the parties involved; in such a case any party has the right to insist upon a new trial. (*Mace* v. *O'Reilley,* 70 Cal. 231, 11 Pac. 721; *Chiricahua Ranches Co.* v. *State,* 44 Ariz. 559, 39 Pac. (2d) 640, 643; *Jordan Valley Irr. Dist.* v. *Title & Trust Co.,* 154 Or. 76, 58 Pac. (2d) 606, 609; *City of Long Beach* v. *Wright,* 134 Cal. App. 366, 25 Pac. (2d) 541, 543; *Company A, First Regiment, etc.,* v. *State,* 55 N. D. 897, 215 N. W. 476, 54 A. L. R. 948; *State ex rel. Wilson* v. *Kay,* 164 Wash. 685, 4 Pac. (2d) 498; 33 C. J. 973, sec. 103.) However, a party may waive his right to a new trial and consent that the successor may decide the case made on the record before the trial judge (*Thomas-Bonner Co.* v. *Hooven, Owens & Rentschler Co.,* (6 Cir.) 284 Fed. 386; *Cahill* v. *Mayflower Bus Lines,* (2 Cir.) 77 Fed. (2d) 838), which, in so far as the appellants are concerned, in this case was done.

It has been held by this court that where a motion for a new trial is heard by a judge who did not try the case, such

judge, not having seen the witnesses nor heard their testimony and observed their demeanor on the stand, was compelled to gain his knowledge of the case from the record alone, and was therefore in no better position to determine the motion than is this court, and hence his order does not carry with it the presumption usually indulged in favor of such order. (*Gibson* v. *Morris State Bank*, 49 Mont. 60, 140 Pac. 76; *Smith* v. *Barnes*, 51 Mont. 202, 149 Pac. 963, Ann. Cas. 1917D, 330; *Waite* v. *C. E. Shoemaker & Co.*, 50 Mont. 264, 146 Pac. 736; *Steiman* v. *Murray Hospital*, 50 Mont. 555, 148 Pac. 339; *Jones* v. *Shannon*, 55 Mont. 225, 175 Pac. 882; *Marcellus* v. *Wright*, 65 Mont. 580, 212 Pac. 299.) By analogy the same rule would apply to findings of fact and conclusions of law made by a judge who did not try the case. (*Morgan* v. *Butte Central Min. etc. Co.*, 58 Mont. 633, 194 Pac. 496.) While the appellants waived their right to insist on a new trial and consented that Judge Besancon could decide the case upon the testimony taken before Judge Lentz, they did not by so doing waive the right to question the weight to be given to Judge Besancon's findings. It is therefore incumbent upon this court to determine the question submitted upon the cold record without the usual presumption given to the findings herein.

The appellants earnestly contend that the quantity of water decreed to a great majority of the parties herein is far in excess of their needs; they do not question the lower court's findings regarding the acreage irrigated by each party, nor that the lands were within the contemplation of the original appropriators and included within the original appropriation, and there is no question raised as to the capacity of the several ditches involved, nor, with the exception of Marie Thayer, the dates of appropriation. The sole question presented on this appeal, therefore, is the duty of the water awarded by the decree.

The lower court by its findings of fact and conclusions of law awarded to the parties, with a few exceptions, an average of two miner's inches to the acre; some of the parties were awarded one miner's inch per acre; of this appellants make no complaint. Some were awarded more than two inches per acre, the same

being for small tracts of from three to twenty acres; as illustrating such award, George 'Fowler, who irrigates three acres, was awarded ten miner's inches, Edna M. Harkness was awarded thirty inches to irrigate twelve acres; Joseph H. Andrews was awarded thirty-five inches to irrigate fifteen acres; T. H. Durnford was awarded sixty inches to irrigate twenty-eight acres. While the evidence is conflicting regarding the character of the soil in the land irrigated, the great preponderance of the evidence is that it is of loose, gravelly character with a decided lack of fine material and a surface or top soil of about six to eight inches, with a coarse gravel below and very little sand.

In this state there is no statute which definitely regulates the duty or amount of water reasonably necessary for irrigation, and the rule has generally been observed by our courts, in fixing the amount required for economical use, to allow one inch per acre, unless the evidence discloses that a greater or less amount is required. (*Conrow* v. *Huffine*, 48 Mont. 437, 445, 138 Pac. 1094; *Tucker* v. *Missoula Light & Railway Co.*, 77 Mont. 91, 250 Pac. 11; *Wills* v. *Morris*, 100 Mont. 514, 50 Pac. (2d) 862.) "The question of the amount of water necessary per acre for irrigation is one of fact for the court or jury, and can never be considered a question of law for the courts." (*Tucker Case*, supra; see, also, *Joerger* v. *Pacific Gas & Elec. Co.*, 207 Cal. 8, 276 Pac. 1017; *Witherill* v. *Brehm*, 207 Cal. 574, 279 Pac. 432; *Mt. Shasta Power Corp.* v. *McArthur*, 109 Cal. App. 171, 292 Pac. 549.)

In *Joerger* v. *Pacific Gas & Elec. Co.*, supra, it was said: "The question of what quantum of water is reasonably required for irrigation is necessarily a complicated one, depending, as it does, upon many different conditions. The character of the soil, the area sought to be irrigated, the climatic conditions, the location, quality, and altitude of the lands, the kinds of crops to be raised, and the length of the irrigation season, must all be taken into consideration and weighed, as well with such other conditions as may be peculiar to each particular case. (*Pabst* v. *Finmand*, 190 Cal. 124, 211 Pac. 11.) Under such circumstances it is apparent there can be no exact uniform rule for

computing the duty or reasonable quantity of water for irrigation to be applied in all cases alike. (*Witherill* v. *Brehm*, 74 Cal. App. 286, 240 Pac. 529; *California Pastorial & Agricultural Co.* v. *Madera Canal & Irr. Co.*, 167 Cal. 78, 138 Pac. 718.)''

In 2 Kinney on Irrigation and Water Rights, second edition, section 904, page 1594, the author says: "In determining the duty of water, or the quantity essential to successfully irrigate a definite tract of land, many questions must be taken into consideration. Among these questions are the character of the soil, * * * and the necessary manner of diverting the water from the source of supply, carrying it to the place of use and the final application to the land, as well as many other questions which constantly arise in connection with this subject. The 'head' of water, or the quantity entering the intake of any canal or ditch, and the distance which the water has to be carried to the place of use, and the necessary loss in the carrying of the water, may also be considered. * * * Therefore, the proper duty of water can only be determined from all the facts surrounding each particular case. What may be the proper quantity of water for one tract, might not be the proper quantity to be awarded to another tract adjoining.'' (See, also, 1 Wiel on Water Rights, 3d ed., sec. 488, p. 525.)

"In spite of the greatest precautions and the greatest care in the construction of the works to conduct the water, there is bound to be some loss of the water in transit between the point of diversion and the place of use. Water will evaporate; it will seep, and, at times, it will leak. These we call the natural losses of the water in transit, and do not, except in the case of leakages, constitute what is termed the wasting of water.'' (2 Kinney, supra, p. 1601; see, also, *Wheat* v. *Cameron*, 64 Mont. 494, 210 Pac. 761.)

In this case nearly all of the witnesses, who were farmers ██ with a wide and long experience in the irrigation of the various tracts of land to which they testified, stated that in their opinion two inches of water were necessary for a beneficial and successful irrigation of such lands, and some of them testified that two and one-half inches, and some of them three inches,

were necessary, and they sufficiently qualified to so testify. On the other hand, the appellants and three qualified irrigation engineers testified that all of the lands involved herein required only one inch per acre successfully and economically to irrigate the same; the engineers, however, had no personal experience with the lands in the Lolo area, and their testimony was based upon a mere casual examination thereof, and one of them based his opinion also upon an improved diversion and irrigation system. While, in determining the weight of the evidence in this case, we should consider the interest of the parties, we should also consider the fact that the engineers were employed by the appellants herein, and in their testimony would likely favor the parties by whom they were employed.

"In determining the amount of water which a user applies to a beneficial use and to which he is entitled as against a subsequent appropriator, the system of irrigation in common use in the locality, if reasonable and proper under existing conditions, is to be taken as the standard, although a more economical method might be adopted." (Weil on Water Rights in Western States, 3d ed., sec. 481, p. 509.) And an appropriator cannot be compelled to divert according to the most scientific method known. (*Joerger* v. *Pacific Gas & Elec. Co.*, supra.)

Appellants contend that this court should entirely disregard the testimony of all the witnesses for the respondents, as well as that of the respondents themselves, and determine the case solely upon the testimony of the irrigation engineers. In the *Joerger Case* just cited, the court said: "Defendants call our attention to the fact that many of the plaintiff's witnesses are farmers, and that their testimony is at variance with that of defendants' experts. Plaintiff, too, produced experts in support of his claims, but the trial court was not bound to accept the testimony of any of these witnesses to the exclusion of the farmers who were familiar with the character of the lands and its needs. Their testimony was also entitled to be considered. It has been said that this character of testimony is of a higher quality than the mere opinion of an expert; that it is the difference between practice and theory, between experience and

216

observation or examination." (See, also, *Stinson Canal & Irr. Co.* v. *Lemoore Canal & Irr. Co.*, 45 Cal. App. 241, 188 Pac. 77.)

It is the policy of this and all western states to require the highest and greatest possible duty from the waters of the state in the interest of agriculture and other useful and beneficial purposes. (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Farmers' Co-operative Ditch Co.* v. *Riverside Irr. Dist.*, 16 Idaho, 525, 102 Pac. 481.) But it is equally well-established that "economy should not be insisted upon to such an extent as to imperil success." (*Allen* v. *Petrick*, supra, p. 380.)

Taking into consideration all of the conditions enumerated herein in determining the duty of water for irrigation purposes, and what is said with reference to the weight to be given to all of the testimony in the case, the quantity of water awarded to the respective parties herein is not excessive, and such awards are sustained by the preponderance of the evidence.

In the matter of the Marie Thayer right, the following proceedings were had in the trial of the case before Judge Lentz:

"Mr. Hershey: Before we go into that there is the Marie Thayer right. I gave a statutory filing of Bruce Noon where he claimed he appropriated June 22nd, 1903, and while this right is of some importance to them I have been authorized in order to avoid half a dozen witnesses being brought into court to shove that right down to 1907.

"The Court: You wish to change the alleged appropriation of Marie Thayer, 160 inches, to June 22nd, 1906, is that right?

"Mr. Hershey: 1907.

"The Court: There being no objection that change is made and the clerk is instructed to make the alteration in the pleadings from June 22nd, 1903, to June 22nd, 1907."

The rule is that the pleadings are binding on the parties to an action. (*Anderson* v. *Mace*, 99 Mont. 421, 45 Pac. (2d) 771; *Weatherman* v. *Reid*, 62 Mont. 522, 205 Pac. 251.) There is in evidence a notice of appropriation signed, sworn to and filed in the office of the clerk and recorder by one Bruce A. Noon,

in which it is alleged that he appropriated four (4) cubic feet per second of the waters of Lolo Creek, on the 22d day of June, 1903, but there is nothing in the record that shows that he transferred that right to Marie Thayer, or conveyed land to Marie Thayer to which that right is appurtenant; there is, therefore, nothing in the evidence, so far as the evidence is certified to this court, upon which the lower court could base an appropriation as of date of July 16, 1902, or any date in the year 1903.

The case will, therefore, be remanded to the district court of Missoula county with direction to modify its decree by awarding Marie Thayer 102 inches of the waters of Lolo Creek as of date June 22d, 1907, and, as so modified, the decree will be affirmed.

The respondents, other than Marie Thayer, are awarded their costs on appeal.

ASSOCIATE JUSTICES MORRIS, ERICKSON, ANGSTMAN and STEWART concur.

Rehearing denied May 20, 1938.

ASSOCIATE JUSTICES ANGSTMAN and ERICKSON, dissenting:

Further consideration of the evidence on motion for rehearing herein has convinced us that the court awarded an excessive amount of water to certain users to the detriment of appellants.

We think that in order to do justice in the case, the cause should be remanded for new trial solely on the issue as to the number of inches of water required adequately to irrigate each tract of land.