No. 12622

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

SUNSET IRRIGATION DISTRICT,

Plaintiff and Respondent,

-vs-

THEODORE AILPORT, et al.,

Defendants and Appellants.

VERNON WOOLSEY; IDA B. TERRY, formerly
IDA B. CRONIN; DAN W. CRONIN, JR.;
DONALD F. PARK; JOHN POPE; J. H. MYERS;
JOE EBERHARDT, the successor in interest
to GEORGE M. CAREY; ROBERT LEWIS, the
successor in interest to EVA McCORMICK;
and ARA LONG VAN DUSEN,

Appealing Defendants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Robert S. Keller, Judge presiding.

Counsel of Record:

For Appellants:

Loble, Picotte, Loble, Pauly and Sternhagen,
Helena, Montana
Lester H. Loble, II argued, Helena, Montana
Murray and Holt, Missoula, Montana
Robert Brown, Stevensville, Montana

For Respondent:

Boone, Karlberg and Haddon, Missoula, Montana
William T. Boone argued, Missoula, Montana
Koch and McKenna, Hamilton, Montana
Thomas P. Koch appeared, Hamilton, Montana

---

Submitted: September 10, 1974

Decided: ᶜᵒ⋯ ⋯ ᵎ⋯ᵎ⋯

Filed: ⁰⁰⋯ ⋯ ⋯ ⋯

---

Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the fourth judicial district in Ravalli County, the Honorable Robert S. Keller, presiding after the death of the late Phillip Duncan who took the testimony. The court found in favor of plaintiff and granted it an appropriation of water. The court found against cross-claimants and counter-claimants and denied them relief.

Plaintiff is Sunset Irrigation District, an irrigation district organized under statute. Plaintiff brought the action to appropriate additional waters of Burnt Fork Creek by enlargement of the district's existing dam on Burnt Fork Lake, situated at the head of Burnt Fork Creek, in a mountain basin involving about one square mile of the drainage area of the creek which drains 74 square miles. The enlargement of the dam would increase the storage capacity of the lake from 386 acre feet to 953 acre feet. Burnt Fork Creek is an adjudicated stream.

Defendants resisted the appropriation. Certain of the defendants filed a cross-claim and counter-claim under section 89-1015, R.C.M. 1947, to require water users on an adjudicated stream to use water according to decree and to require the water commissioner to distribute and measure the water in accordance with the decree.

The issues for review are two in number, (1) whether the court was in error in granting Sunset an appropriation of 953 acre feet of water together with the right to impound it; and (2) whether the court erred in denying relief to the cross-

claimants and counter-claimants.

Before discussing the issues, we shall comment briefly on the situation posed by the death of the trial judge who heard the evidence. A stipulation was entered into which waived a new trial, approved Judge Keller's assumption of jurisdiction and a view of the area, and stipulated that the usual presumptions of correctness of Judge Keller's findings based on conflicting evidence would not apply. Thus, we examine the entire record as if we were trial judges. By this we do not mean that we will separately and in detail find facts; but that we will examine the record to determine the ultimate facts. Judge Keller viewed the entire water drainage. We will only view the exhibits. (For a comparison of a similar situation, see Worden v. Alexander, et al., 108 Mont. 208, 90 P.2d 160.)

Further, the issues are approached differently in appellants' brief from that of respondent's brief. Appellants assert that Sunset's action to appropriate waters of Burnt Fork Creek is by enlargement of its presently unlawful dam. Much of the thrust of appellants' argument is based on the repeated assertion that the present existing dam is unlawful. So, we will review the history of Sunset's storage.

Burnt Fork was adjudicated in Cowell v. Julian, Ravalli County Cause No. 556, decree dated April 19, 1905. In 1907, the record shows a dam for storage with an appropriation of water which came down by conveyances of record (albeit perhaps not perfect and exclusive title) to Sunset. It is clear

that Sunset has asserted and survived all rights of ownership. In 1929 the dam was enlarged to its present size, about 400 feet long and 18 feet high with about 35 acres of area in the lake. The dam captures and stores water from a drainage area of about one square mile. From November 1 to May, flood and surplus waters from springs, melting snows and rains that would otherwise go to waste are stored. The dam was constructed and operated under a permit of the U.S. Forest Service.

The stored water is released about July 15 and conducted by means of the creek channel to two ditches which then convey the water to Sunset lands.

The foregoing brief recitation establishes that the dam was not, as appellants keep repeating, an illegal dam in any sense of the word.

It would unduly lengthen this opinion to analyze the testimony of each witness. However, Judge Keller in a memo attached to his findings and conclusions has succinctly stated his rationale as follows:

> "MEMO: There is no question but what water is going to waste, both during the non-irrigation time of the year, and at the highwater period. Defendants' concern is predicated primarily on the need for keeping an underground reservoir filled, which is done with run-off water, and with thoroughly flooding the crop lands at the period of highwater, so that their decreed rights will maintain the growth of crops for the rest of the growing season.
>
> "The amount of water stored from October 1 until May 1, or the need for that water, is not seriously contended by any of the witnesses for the defense. Apart from the fact that no one has had it for over

forty years, the amount involved is infinitesimal compared to the rest of the drainage of Burnt Fork Creek, and this Court is satisfied that that is truly water going to waste. As to the use of water during normal run-off time by all of the users, the testimony made it clear that everybody used all the water he could get, two to three times the decree rights, and there was still water running down the creek, i.e., all of the water at normal run-off time cannot be put to a beneficial use, cannot even be used. Now the normal run-off water should be coming from lower elevations than Burnt Fork Lake, and again, the amount that would be impounded in the proposed dam would be less than 5% of the run-off waters, i.e., the defendants will not suffer detriment.

"The fact that so many of the users, including many of the witnesses for the defense, urged the construction of a dam at the mouth of Gold Creek makes it clear that a vast number of the users, if not all of them, believed there is not only water going to waste, but that there should be an impoundment of these waters.

"The concern of Professor Bowman that the new dam will stop the springs from flowing in the Burnt Fork Lake basin omitted something in the telling. He viewed the Lake, and took the pictures of the Lake, in September, i.e., when the headgates were open, and the Lake was down as far as it could go. He testified that the vast majority of these springs were just above the level of the Lake when he viewed it in September of 1968, i.e., all of those springs would be shut down by the weight of the water with the present dam, since 2 to 7 feet of water would be sufficient to do this. The effect of this condition in the past, it his testimony is correct, is to provide an additional aquifer for the benefit of the decreed users. The Lake waters were impounded at a time when they do not need the water, and this is when the springs are shut off, i.e., when they do not need the water. When the dam is let out, the plaintiffs get only the amount of water that is impounded in the dam, with all excess water going on down the creek. As the waters are let out of the dam, these springs are released, which also releases the waters impounded by the shutting off of the springs. This is water that goes on down the creek, for it is not included in the computation of water impounded by the Sunset Irrigation District. If Professor Bowman's testimony is correct, the same condition will continue in the future, only more springs will be stopped, giving a greater benefit to the decreed users.

"The concern of the defendants that this water is going

-5-

out of the drainage district is not a valid concern. It is water going to waste, which would otherwise be flowing into the Bitterroot River, of no more use to the decreed users than if it goes up on the Sunset Bench.

"The new dam should be a benefit to all parties. Heretofore, the normal flow in May, before the dam fills, was withheld from the creek, and at times, this flow could have been utilized by the decreed users who needed to irrigate in May. The new dam will have the kind of controls in it that will permit this flow to be released, and at the same time give a greater impoundment of run-off waters. The Court was not too impressed with the arguments concerning adverse use, but in a Court of Equity, it's extremely difficut to overlook laches."

What the trial court found, and as we find from the record, is that: no injury was shown to prior appropriators; there was surplus water to be appropriated in the manner proposed; the storage proposed not only would not injure other users but actually benefit them; that the proposed dam could be operated so as not to interfere with others; and that the appellants were guilty of laches. Other matters such as adverse use and prescriptive rights were not really an issue and need not be determined.

We have examined the record, exhibits, and find as the district court did. Thus, as to the issues previously set forth, the Court was correct in granting an appropriation of water with the right to impound it, subject to conditions; and was also correct in denying relief to the cross-claimants and counter-claimants. Accordingly the judgment is affirmed.

We concur:

_Wesley Castles_
Justice

_____
Chief Justice

_____

_____
Hon. District Judge W. W. Lessley,
sitting in place of Justice John Conway
Harrison.