Argued March 2, affirmed April 12, 1921.

## WYMAN *v.* NOONDAY MINING CO.

(197 Pac. 289.)

**Taxation—Tax Lien Superior to Prior Mortgage Lien.**

1. Section 4328, Or. L., providing that tax liens shall have priority to and be fully paid and satisfied before any and every judgment, mortgage, or other lien, etc., makes a tax lien superior to a prior mortgage lien.

**Venue—Foreclosure Proceedings Properly Continued in County Where Instituted, Despite Change in Boundary.**

2. Foreclosure proceedings against a mining company on account of unpaid taxes, instituted under Section 4332 et seq., Or. L., were properly continued in Douglas County, where instituted, where the mining company's property was situated, despite Laws of 1915, Chapter 65, amending Section 2557, L. O. L., to change the boundary line between Lane and Douglas Counties, so that the property was thereafter in Lane County.

---

1. Validity and construction of statute giving tax lien priority over other liens, see notes in Ann. Cas. 1913B, 520; Ann. Cas. 1917A, 1079.

Priority as between purchase-money mortgage and tax assessment, see note in Ann. Cas. 1916C, 955.

From Lane: GEORGE F. SKIPWORTH, Judge.

Department 1.

This is a suit by the trustee to foreclose a mortgage upon the real property of the Noonday Mining Company, a corporation formerly doing business in Douglas County, Oregon, which mortgage was dated October 1, 1897, and covered certain mining claims then the property of said company, was duly recorded in Douglas County and was given to secure a bond issued by said Noonday Mining Company. It is charged substantially in the complaint that Douglas County levied void and illegal taxes upon said property for the years 1909 to 1913, inclusive, and sold the tax certificates to Guy Gordon, who transferred them to R. L. Whipple; that the latter brought a proceeding to foreclose said certificates and in his complaint made only the Noonday Mining Company defendant; that on July 21, 1915, a decree was rendered in said proceeding finding that there was $139 in delinquent, unpaid taxes due on said certificates and directing a foreclosure sale of the premises to satisfy the same; and that thereafter on August 20, 1915, the sheriff of Douglas County made a purported sale of the premises to R. L. Whipple for the alleged sum of $139, and executed and delivered to him a deed to the premises. Then follow allegations of a lease of the premises by Whipple to defendant Coffman, and of conveyance from Whipple to Coffman and Helliwell, and averments that these defendants have taken and are taking large quantities of ore from the tunnels in said mine, of the probable value of $8,500, and are committing waste therein to the detriment of plaintiff's *cestuis que trustent* and to the destruction of the value of their security. Plaintiff tenders the

amount of the taxes and penalties alleged to be due and prays for a decree declaring plaintiff's mortgage to be a first lien upon the property. He also asks that the foreclosure and sale of the mortgaged premises be set aside; that the deed of the sheriff to Whipple and that from Whipple to Helliwell and Coffman be declared void; and that they be required to account for the ore taken from the premises; adding a request for general equitable relief.

The defendants after appropriate denials, justify under the foreclosure and sale and the sheriff's deed thereunder.

There were findings and decree for defendants, and the plaintiff appeals. AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Whitten Swafford.*

For respondents there was a brief over the names of *Mr. J. S. Medley* and *Messrs. Neuner & Wimberly,* with oral arguments by *Mr. Medley* and *Mr. Carl E. Wimberly.*

McBRIDE, J.—The facts appear to be as follows: That the taxes for the years above mentioned were regularly and legally assessed and were allowed to become delinquent; that on August 22, 1911, the sheriff of Douglas County duly issued a certificate of delinquency to Guy Gordon, in consideration of the sum of $9.10, being the amount then due for delinquent tax for 1909 and interest, penalties, and costs thereon; that Gordon sold and transferred the certificate to Whipple, who paid the taxes for the succeeding years; that, said property not being redeemed within three years, Whipple on February 11, 1915, filed in the Circuit Court for Douglas County his

application for a judgment foreclosing the lien of said certificate in the manner prescribed by law; that, since the Noonday Mining Company was a non-resident corporation and had no agent in the state upon whom service of summons could be made, he caused service to be made by publication, and on July 21, 1915, took his default and judgment. It is contended that this judgment does not bar plaintiff, because there was no service upon him and he was not made a party.

This is a special proceeding *in rem* against the property, and, while it is much less than the old practice of sale of land for taxes without foreclosure, it resembles it in many respects. Previous to the passage of the act of 1907 (Laws 1907, Chap. 267, p. 453), the only notice that has been given to any delinquent taxpayer was that contained in the advertisement of the sale by the sheriff; and such is now the case in many of the states, perhaps a majority of them. A land owner or his mortgagee was presumed to know what property he owned and to know that it was liable to taxation. In *Minnesota* v. *Central Trust Co.*, 94 Fed. 244 (36 C. C. A. 214), Judge Thayer remarks:

"It has been held frequently that a tax lawfully imposed by the state on its citizens is not an ordinary debt, but is an obligation which by its very nature should be regarded as paramount to all other demands against the taxpayer. * * These decisions also express a thought which is generally prevalent in the public mind that taxes levied by the state for its own support are founded upon a higher obligation than other demands. The fact has also been recognized from time immemorial that every sovereignty ought to be armed with the requisite power to enforce the collection of taxes without fail, and to compel the prompt payment of whatever imposts it sees fit to

levy for its own support.    In view of that necessity
it has been a common practice to provide summary
remedies for enforcing such demands, which have
been upheld by the courts whenever assailed, although
it is quite probable that some of the remedies so pro-
vided could not have been sustained as affording due
process of law, if the proceedings had related to the
collection of purely private debts.''

1. It is urged by counsel for plaintiff that a statute
will not be construed to make a tax lien superior
to a prior mortgage lien, unless that intent is clearly
manifested in the act itself.    The courts are divided
on this question, but we think that intent is clearly
manifested by the language of our statute.    Section
4325, Or. L. (Olson's Comp.), provides that—

''Such liens shall have priority to and be fully paid
and satisfied before any and every judgment, mort-
gage or other lien or claim whatsoever, except the
lien for a tax for a subsequent year.''

This statute was taken almost bodily from the
Washington law, and it has there been held in re-
peated decisions that the language thus used not only
makes a tax lien paramount to every mortgage or
other lien upon the property, but that it is unneces-
sary to make such mortgage or lienholders parties
to a proceeding to foreclose a tax certificate: *Darnell
Mining & Milling Co.* v. *Ruckles,* 45 Wash. 180 (88
Pac. 101); *Sherman* v. *Schomber,* 43 Wash. 330 (86
Pac. 569); *Rowland* v. *Eskeland,* 40 Wash. 253 (82
Pac. 599); *Spokane Falls & N. R. Co.* v. *Abitz,* 38
Wash. 8 (80 Pac. 192).

2. We are of the opinion that the decree of fore-
closure was valid and effectual to bar plaintiff in this
action, unless it was rendered invalid by the act
changing the boundary line between Lane and Douglas
Counties, whereby the premises in controversy were

transferred from Douglas County and became a part
of Lane County. The act in question is Chapter 65
of Laws of 1915, page 74, entitled, "An act to amend
Section 2557 of Lord's Oregon Laws relating to the
boundary line between Lane and Douglas Counties,
Oregon." It simply changed the boundary line of
Lane County, so that it became located farther south
than before, thereby taking in a part of the territory
previously included in Douglas County. There was
no provision for transfer of suits or actions pending,
relating to realty; nothing but a mere change of
boundary. The question now arises: What became
of suits or proceedings pending in relation to realty
situated on the included strip? This proceeding had
been "commenced" and was pending in Douglas
County when the act went into effect, which was on
May 21, 1915: Section 51, Or. L.; *Burns* v. *White
Swan Co.,* 35 Or. 305 (57 Pac. 637); *Dutro* v. *Ladd,*
50 Or. 120 (91 Pac. 459). There could be no change
of venue under Section 347 of the Code, for the rea-
son that the proceeding had been commenced in the
proper county. The whole proceeding was either
annihilated and rendered void by the change of
boundary, or the plaintiffs therein were entitled to
proceed to a decree as though no boundary act had
been passed. The situation is so peculiar and the
omissions in the boundary act are so unusual that it
is difficult to find precedent in the authorities. We
have, however, found a few cases in point, and the
weight of authority is to the effect that where a
proceeding in equity relating to real estate has been
commenced prior to the division of a county and no
provision is made in the act for a transfer to the
county in which the realty becomes situated after the
passage of the boundary act, the court of the county

where the property was originally situated retains jurisdiction and may proceed with the same effect as if no such change has been made: *Tyrell* v. *Rountree,* 32 U. S. (7 Pet.) 464 (8 L. Ed. 749, see also, Rose's U. S. Notes); *Arnold* v. *Styles,* 2 Blackf. (Ind.) 391; *Buckinghouse* v. *Gregg,* 19 Ind. 401; *Milk* v. *Kent,* 60 Ind. 226. See, also, *Moss* v. *Shear,* 25 Cal. 38 (85 Am. Dec. 94), wherein it is held that a change of boundaries after a tax has been assessed does not affect the lien of the tax on the land, and that the tax collector of the old county has power to sell the land to enforce the lien, without regard to the change of boundary. The plaintiff in this case seeks to assimilate the proceedings upon foreclosure of a tax certificate to those provided for in cases of sales upon decrees for the foreclosure of mortgages and other liens, but in many particulars the procedure is radically different. The law especially provides that the proceedings shall be summary. No formal answer is required in case of a defense to the proceeding, but merely a "writing under oath" specifying "the particular cause of objection." Thereafter it is prescribed that—

"The court shall order and direct the clerk to make out and enter an order for the sale of such real property against which such judgment and decree is made, or vacate and set aside the certificate of delinquency, or make such other order, judgment, or decree as in law and equity may be just. Said order shall be signed by the judge, and a certified copy of such order, together with a list of the property therein ordered sold, shall be delivered to the sheriff of the county, and shall be full and sufficient authority for him to proceed to sell said property, or so much of each tract or lot as may be necessary, for said sum set forth in said order, with interest and accruing costs, and to take such further steps in the matter

as are provided by law. The sheriff shall, immediately after receiving the copy of the order, judgment, and decree of the court, proceed to sell said property as provided in this act. All sales shall be made on Saturday between the hours of 10 o'clock in the morning and 4 o'clock in the afternoon, and shall continue from day to day, Sundays excepted, during the same hours, until all lots or tracts are sold, after first having given notice of the time and place where such sale is to take place for ten days successively by posting notices thereof in three public places in such county, one of which shall be in office of the tax collector."

No return of the sheriff is required, and his deed to the purchaser is made *prima facie* evidence that—

"The real estate conveyed was subject to taxation at the time the same was assessed in the time and manner required by law.

"That the taxes or assessments were regularly levied, and were not paid at any time before the issuance of the deed.

"That the real estate conveyed had not been redeemed from the sale at the date of the deed.

"That the real estate was duly sold for taxes, assessments, penalties, and costs as stated in the deed.

"That the grantee in the deed was the purchaser or assignee of the purchaser.

"That the sale and all antecedent proceedings were conducted in the manner required by law."

The manifest intent of the statute was to assimilate the proceedings to the summary methods of sale for taxes under the law previously existing, the provisions for foreclosure by a proceeding in the Circuit Court being merely an amelioration of the summary methods therein prescribed.

If delinquent taxes are to be collected at all, it is difficult to decree any effective method of doing so

which would be more lenient than that prescribed by our present statutes. The delinquent taxpayer is first notified in writing of the fact of delinquency: Section 4332, Or. L. Four months later the sheriff is required to post notice of delinquency: Section 4337, Or. L. And six months after delinquency the sheriff may recover the amount of the tax from any person who offers to pay the same, and issue a certificate of delinquency. After waiting three years, the holder of the certificate may bring a proceeding in the Circuit Court and after sixty days' notice of service can get his decree of foreclosure. After notice of sale he or some purchaser there may receive a deed to the property. Here is an interval of nearly four years between the date of original delinquency and the divestiture of title of the owner by sale and deed. Indeed, the conveyance by the sheriff does not finally settle the title, as Section 4363 provides that any person who has not been personally served with notice or summons and who has not appeared in the foreclosure proceedings may within one year after the decree therein be allowed to appear and file objections thereto, and if successful the decree and all proceedings under it may be set aside. The whole proceeding is statutory and *in rem*, and the usual methods prescribed in the general statutes are not applicable except so far as they are made so by the act. Proceedings to foreclose a tax certificate, while they have many of the attributes of an ordinary suit by one private person against another, are in fact a part of the public machinery for the collection of taxes. Subdivision 9 of Section 4332, Or. L., makes the county a guarantor of the validity of tax certificates, and imposes upon it the obligation to refund the money paid therefor, if such certificates should be adjudged invalid. Further, as indicating the semi-

public character of the proceedings, the law, as it existed at the time the tax foreclosure proceedings involved in this case were instituted, required the county clerk to furnish to holders of certificates of delinquency, free of expense, forms for summons and forms of publication of summons when required, and further required the district attorney to prosecute such proceedings on request of the holder of such certificates. In short, an inspection of the act discloses that its provisions are so different from those applicable to ordinary foreclosures and sales upon execution, that the latter were not in contemplation of the legislature when the act was passed.

We are of the opinion, therefore, that because this proceeding was begun in Douglas County before the boundary act was passed, the court of that county retained its jurisdiction to proceed to final decree and sale without regard to the change in boundary; and that the sale and conveyance thereunder by the sheriff of Douglas County vested the title to the disputed premises in defendant Whipple, unencumbered by plaintiff's mortgage. This view renders unnecessary a discussion of the other points so ably presented by plaintiff's counsel.

The decree is affirmed.            AFFIRMED.

BURNETT, C. J., and HARRIS and BROWN, JJ., concur.