Argued at Pendleton May 5; affirmed June 23; rehearing denied
October 6, 1931

# SKINNER *v.* JORDAN VALLEY IRRIGATION DISTRICT

(300 P. 499, 3 P. (2d) 534)

*J. B. Eberlie,* of Boise, Idaho, and *C. B. McConnell,* of Burns (Richards & Haga, of Boise, Idaho, on the brief), for appellant.

*P. J. Gallagher,* of Portland (Bruce R. Kester, of Ontario, on the brief), for respondent.

BEAN, C. J.  The Jordan Valley project is situated in Malheur county and was originally a Carey Act project.  The construction company was the Jordan Valley Land and Water Company and the operating company was the Jordan Valley Water Company.  The state contract between the construction company and the desert land board was executed June 21, 1918, under the provisions of the acts of Congress, commonly known as the Carey Act (§§ 641 et seq., U. S. C. A., Title 43) and the laws of the state of Oregon accepting the same.

The Jordan Valley Land and Water Company appropriated a large amount of water of Jordan creek, Jack creek, Antelope creek and Boulder creek, and secured a permit from the state engineer of the state

of Oregon to store said waters in a reservoir, known as the Antelope reservoir. The main purpose of appropriating and storing the water was to use the same in the reclamation of arid lands under the Carey Act contract with the state of Oregon. The construction company began the construction of the system and partially completed it to a point where the water was actually delivered from the Jordan creek in the canal some twenty-two miles long and stored in the Antelope reservoir, and the distribution system was completed to a point where practically 1,700 acres of land were under cultivation, including the lands of plaintiff.

In February, 1918, the construction company entered into a contract with plaintiff whereby, in consideration of 420 acres of land conveyed to the construction company by plaintiff, it sold to plaintiff 258.5 acres of land in section 19, township 30 south, range 45 east, Willamette meridian,

"together with a water right for an equal acreage which first party, his grantees or assigns, may use either upon the said lands and premises in section 19, so to be conveyed to him by the party of the second part, or upon any lands owned by the first party in sections 13, 14 and 23, township 30 south, range 44 east, W. M.; it being understood and agreed that the amount of water to which the party of the first part shall be entitled under his water contract or the shares of stock to be issued to him in the Operating Company, to be organized for the purpose of operating the irrigation system now being constructed by the party of the second part in Jordan Valley, Oregon, shall be such amount per acre for 258.5 acres as may be fixed by the State Engineer or the Desert Land Board of the State of Oregon in the contract to be entered into between the State of Oregon and the said party of the second part for the irrigation and reclamation of certain lands situated under said irrigation system, com-

monly known as the Jordan Valley Project, which lands are now being segregated from the Public Domain under the Act of Congress commonly known as the Carey Act; and the party of the first part shall bear the same relation to such irrigation system and receive the same amount of water per acre for a total of 258.5 acres for the irrigation of his said lands as other purchasers of water rights in said irrigation system; but the party of the first part shall be entitled, as aforesaid, to use said water upon any lands owned by him in said sections 13, 14 and 23, township 30 south, range 44 east, and section 19, township 30 south, range 45 east; and such water shall be delivered to first party, his grantees and assigns, as and when demanded during the irrigation season, but at a rate of flow not exceeding ten (10) cubic feet per second."

On November 15, 1919, the same parties executed a supplemental agreement, by which the construction company agreed to rebuild the flume, if necessary, and maintain the same in a serviceable condition for a period of three years. The construction company had constructed a flume for plaintiff's use, which was not of sufficient capacity to carry ten cubic feet per second and was so constructed that it was destroyed during the high water in the spring rains of 1922, and was not thereafter rebuilt by the construction company. The plaintiff improved the lands conveyed to him by the construction company, and the waters so conveyed to plaintiff were used on the lands until such time as the use thereof was impossible by reason of the destruction of the flume. During the following years a small portion of water was delivered to plaintiff, which he used upon his other lands.

After the partial construction of the irrigation system, as above mentioned, the construction company became financially involved and could not complete the

contract with the state. Thereafter the desert land board took the necessary steps under the statute to forfeit the rights of the construction company in the contract, and about the same time the construction company was declared a bankrupt by the United States District Court for the District of Idaho. The owners of the desert lands susceptible of irrigation from this project, other than the plaintiff, organized an irrigation district, and this defendant irrigation district became the purchaser at the bankrupt sale of all the right, title and interest of the construction company in the incompleted works, rights of way, permits and other property of the construction company, and on April 30, 1924, the defendant district entered into a contract with the desert land board of the state of Oregon whereby, in consideration of the sum of one dollar and covenants and agreements to complete the irrigation system according to the specifications set forth in the contract, all of the incompleted project was transferred to the defendant herein. One of the covenants of said contract provides:

"The district agrees to allow proper credits of all amounts paid by the purchasers under outstanding water right contracts issued by the Jordan Valley Land and Water Company, it being understood that the value of a full water right under the district plan, shall form the basis of a new contract between the district and each water user, which shall replace present outstanding contracts."

Plaintiff complied with the terms of his contracts with the construction company and claims a vested right to the use of the water conveyed to him by virtue of his contract. After the irrigation district acquired this irrigation system there was a dispute as to the right of plaintiff to receive the water according to

the contract, and only a portion thereof has been delivered to him during certain years, and during the years of 1928 and 1929 defendant refused to deliver any water to the plaintiff. It is stated that the plaintiff's contract is the only outstanding contract in existence entered into by the construction company. All the other water users from defendant's system are landowners and taxpayers of the Jordan Valley Irrigation District, or some other irrigation district, and adjusted their rights so that they claim their water by virtue of such district organization, and not through any contract with the original construction company.

It appears from the testimony that the officers of the irrigation district had knowledge of plaintiff's contract with the construction company and of what had been done in carrying out the contract in the way of constructing the canal and irrigating his land.

■ Purchasers of property of a construction company have constructive notice of the rights of a landowner where lateral ditches of such landowners could be seen from an inspection of the system: *In Re Deschutes River,* 134 Or. 623 (286 P. 563, 294 P. 1049); *Henrici v. South Feather Land and Water Co.,* 177 Cal. 442 (170 P. 1135); *Rubio Canon, etc., Co. v. Everett,* 154 Cal. 29 (96 P. 811); *Stanislaus v. Bachman,* 152 Cal. 716 (93 P. 858, 15 L. R. A. (N. S.) 359).

In *Rubio Canon, etc., Co. v. Everett,* supra, the court found that the purchaser took with notice of easement. This finding was assigned as error. The Supreme Court said:

"We do not find it necessary to decide whether or not the record of the deed was constructive notice to the defendant, for we are of the opinion that the evidence is sufficient to sustain the finding of the court that the defendant had actual notice of facts and cir-

cumstances sufficient to put him on inquiry as to the pipe line and right of way, and this finding supports the judgment.

"The defendant knew of the well and pumping plant and that it was a part of plaintiff's water system and was used to supply water to plaintiff's reservoir and pipes, by means whereof it distributed water to its stockholders in the neighborhood. He knew that the land he was buying was dependent upon this system for water to use thereon; that in order to obtain this water he must become a stockholder of plaintiff. * * *"

Section 60-509, Oregon Code 1930, which is a part of the statute accepting the conditions of the Carey Act, referring to the necessary provisions of the Carey Act contract as to the time, equipment and diligence, provides, in part, "that the contractor shall secure for the use and benefit of the reclamation system all necessary water rights, rights of way, reservoir sites, or other property necessary for its construction and operation; * * *."

It is asserted, and not contradicted, that this land purchased from the plaintiff by the construction company, for which the land and water rights were conveyed to him, was for the benefit of the irrigation system in connecting up the different portions of land over which it was desired to construct a ditch or canal, and it appears that the arrangement and contract between the plaintiff and construction company inured to the benefit of the irrigation system.

■ This proceeding does not contest the right of the construction company to purchase the land from plaintiff; neither is there any question in regard to the conveyance of the land by the construction company to plaintiff. We have then for determination the rights of plaintiff under the executed contract. At the time

the construction company failed, there had not been a formal acceptance by the state of a unit or any number of acres of land as reclaimed. The contract between the plaintiff and the construction company, which we think the irrigation district, by its contract with the state, agreed to carry out, differs from the usual contract of an entryman or settler under the Carey Act project. Nevertheless the contract was not repugnant to the law, and the equities of the case must be determined. It should be noticed that plaintiff's land and water right, which he obtained from the construction company, was paid for in full.

■ The Jordan Valley Land and Water Company, a corporation, was engaged in the business of purchasing, selling, developing and irrigating lands and impounding waters therefor. The company owned and managed an irrigation system for lands lying adjacent to plaintiff's lands, which lands are now embraced in the boundaries of the irrigation district. The company had constructed a large reservoir adjacent to said lands and had impounded therein quite an amount of water for the purpose of irrigating. This appears by the allegations of the complaint, and such allegations are practically admitted. The defendant denies that the corporation was engaged in the business after January 1, 1920. It admits that the reservoir was built and the water impounded in 1918, 1919 and 1920. As we view it, this constituted an appropriation of water by the construction company, and in view of the fact that the plaintiff and defendant are claiming water rights through the same company, it is not necessary to devote time to the question of the appropriation by the construction company as, if it is questioned by defendant, then it is questioning its own title.

■■ In February, 1918, before the construction company entered into a contract with the state for the reclamation of lands under the Carey Act, the construction company entered into the contract with the plaintiff, and pursuant thereto conveyed to plaintiff 258.5 acres of land, together with a water right. The contract provided that the amount of water per acre for the 258.5 acres should be as fixed by the state engineer or the desert land board of the state of Oregon in the contract to be entered into between the state of Oregon and the construction company. This contract was made some five months before the construction company made the contract with the state for the reclamation of the land under the Carey Act. Therefore, the Carey Act contract governs the rights of plaintiff only to the extent as provided for in plaintiff's contract with the construction company: *Allen v. Railroad Commission,* 179 Cal 68 (175 P. 466, 8 A. L. R. 249). The state engineer and the desert land board, in the contract with the construction company, fixed the quantity of water necessary to be delivered, as "one-eightieth (1/80) of a cubic foot of water per second of time, measured at the head of the farmer's service lateral or ditch, for each acre of land to be irrigated therefrom." The same provision was made in the contract between the irrigation district and the state of Oregon when the irrigation district took over the system. The irrigation district purchased the irrigation system from the receiver in bankruptcy for the consideration of some $35,000, and also contracted with the state to complete the construction of the Carey Act system. The district, by so doing, took the water system, including the reservoir and ditches and canals, subject to outstanding contracts, and it is required to perform the obligations of such contracts, and takes

the property burdened with the right, easement and servitude which the construction company had conveyed to plaintiff: 3 Kinney on Irrigation and Water Rights, (2d Ed.) § 1520, p. 2736; *In re Deschutes River,* supra, at p. 658; *In re Willow Creek,* 119 Or. 155 (236 P. 487, 763); *Smith v. Willis,* 84 Or. 270 (163 P. 810); *Stanislaus v. Bachman,* supra; *Allen v. Railroad Commission,* supra; *Edinburg Irr. Co. v. Paschen,* (Tex.) 235 S. W. 1088.

*Stanislaus v. Bachman,* supra, is a pathfinder case. The opinion is by Mr. Justice Shaw and has been cited with approval in opinions in this state. Referring to an agreement similar to the one between plaintiff and the construction company, the court said, in substance, that the agreement, in legal effect, is to sell a right or interest in real property. It remains real property throughout the process, and until it serves its purpose by being absorbed into the land which it moistens. Hence the agreement to furnish the necessary water from a canal from year to year during the time specified and to deliver it upon certain lands for the irrigation thereof, for an agreed price, was in effect an agreement for the sale of real property of the canal company.

"Such an agreement, with all its terms, is binding not only upon the maker, but upon all persons who subsequently acquire the maker's title to the property agreed to be sold with notice of the agreement. The plaintiff, as we have seen, bought with notice and it is, therefore, as much bound to comply with this part of the agreement according to its terms as if it had executed the same."

It is shown by the record in the present case that the officers of the irrigation district had knowledge of the contracts between the construction company

and the plaintiff, or at least notice of sufficient circumstances to put them upon inquiry thereof. They knew that the plaintiff was receiving water from the system at that time. Having purchased the irrigation system with such notice, they are bound by the contract and take the property burdened with the right or easement, the same as it was held by the construction company. The right to the use of water constitutes a vested property interest which cannot be divested without due process of law: 3 Kinney on Water Rights (2d Ed.), § 1381; 2 Weil, Water Rights in Western States (3d Ed.), § 1193, p. 1103; *In re Deschutes River,* supra; *Stanislaus v. Bachman,* supra; *Edinburg Irr. Co. v. Parker,* supra; *Idaho Irr. Co. v. Gooding,* 265 U. S. 518 (44 S. Ct. 618, 68 L. Ed. 1157).

In U. S. C. A., § 641, that section being a part of the Carey Act, we find note 29:

"A contract entered into between the state and the transferee of the interest of an insolvent company which had made a Carey Act construction contract, held to bind such transferee to carry out all contracts for water rights sold and contracted to be furnished by the insolvent company, on the terms agreed to by such company." Citing *Sauve v. Title Guaranty & Surety Co. of Scranton,* 29 Idaho 146 (158 P. 112).

■ Defendant contends that there must be no sale of land or water or any unit or portion of the Carey Act system without first obtaining permission of the desert land board. Remembering that the contract in question was made before the Carey Act contract, if such contract has an influence on the right of plaintiff, we notice that in the contract between the construction company and the desert land board the board considered this requirement was already complied with

at the time of the execution of the contract, or at least that the strict compliance of such requirement was waived by the provisions of article. VIII, section 2 of the contract, which reads as follows:

"Opening Lands for Entry. The construction company being now actually engaged in the construction of said irrigation system and having already expended a large sum in construction work thereon, it is expressly agreed that upon the execution of this contract and filing of the bond required to be filed hereunder, five thousand (5,000) acres of said Carey Act lands shall immediately be thrown open for entry and settlement, as provided by law; * * *."

The appellant contends that plaintiff's right is limited to a proportionate share of the water impounded at the date of the forfeiture of the construction company's contract. With this contention we are unable to agree. Plaintiff's contract grants 258.5 acres, together with the water right for an equal acreage. The contract does not provide that the plaintiff shall receive a pro rata share of water stored or that he shall prorate with later settlers who purchased Carey Act contracts. If such were the holding, then the construction company or its successor might sell vast quantities of land and water rights so as to minimize the amount left for plaintiff, and practically defeat plaintiff's right under his contract. The making of the agreement by the plaintiff with the construction company, and its complete performance by plaintiff, resulted in an executed contract transferring to plaintiff real property, and it should be specifically enforced: *Smith v. Willis,* supra; 3 Kinney on Irrigation and Water Rights, § 1520; *Consolidated Juchem Ditch and Reservoir Co. v. Old,* 62 Colo. 470 (163 P. 78); *Dickson v. Dick,* 59 Colo. 583 (151 P. 441).

In *Smith v. Willis,* supra, this court, speaking by Mr. Justice McBride, said:

"It also sufficiently appears that the original grantor and these plaintiffs used water from their irrigation system to irrigate 800 acres of their own land, and that this occasioned such a shortage they were unable to furnish the water in the agreed quantity to defendants. This they had no right to do. It was their duty to furnish the water they had contracted to furnish to defendants at any inconvenience that a compliance with their contract might occasion to themselves, * * * *."

■ In the Willow Creek case, Mr. Justice Coshow says: "It was the duty of the purchaser at the bankruptcy sale, and their successors to maintain the system in good condition." The circuit court, in requiring defendant to reconstruct the flume, which the construction company had agreed to reconstruct, followed the holding, as we understand, in the Willow Creek case, and we think the requirement is equitable and just. It would be idle to grant to plaintiff a water right without some provision or means for his conveying such water to his land.

■ It is claimed by defendant that the forfeiture of the construction contract by the state of necessity forfeited every interest in the system and left no outstanding rights. We are unable to agree with this contention. The forfeiture of the contract was, in effect, a foreclosure of the interests of the construction company, and nothing more. The referee in bankruptcy sold the interest of the Jordan Valley Land and Water Company and could sell nothing more. That interest was sold and the forfeiture was affected subject to any right that the plaintiff and Azecuenaga and others had in the irrigation system by virtue of their con-

tracts, which were easements and servitudes upon the reservoir, canals and ditches, or system. It appears that the settlers who had made a regular Carey Act contract with the construction company had paid for a portion of their rights, and, as stated, their equities in the matter were recognized and adjusted upon the organization of the irrigation district. The plaintiff had paid in full for his water right by the conveyance of valuable land to the construction company over which they desired to construct a ditch or canal. This being the case, we fail to see how equity would require the plaintiff to make additional payments for the completion of the system or bear a portion of the burden of the $430,000, expended by the district. The reclamation of land under the Carey Act is carried forward pursuant to contracts. Such contracts should not be construed so as to impair the obligations of a contract connected therewith made prior to entering into a Carey Act contract. Whether the adjustment of the rights of Azecuenaga and the several settlers on the project was equitable cannot enter into this case. They were made by agreement or acquiescence. The plaintiff cannot be forced to make a new contract with the irrigation district. Equity should protect him in whatever right he had under his executed contract with the Jordan Valley Land and Water Company.

It is shown by the record that the irrigation district, after it purchased the irrigation system, in extending the works expended about $430,000. A large part of this amount was expended for the purpose of increasing the area of land to be irrigated. Prior to the purchase Azecuenaga had an agreement with the construction company for water for a large area of land. The district recognized this agreement and pur-

chased Azecuenaga's right for the sum of $20,000. The officers, when investigating the condition of the project, were informed of Skinner's contract by the then state engineer, and for a time permitted plaintiff to obtain some water, but finally were unwilling to recognize plaintiff's right.

■ The trial court fixed the duty of water for plaintiff as three acre-feet for the season, while, as we have noted, the contract provided that the plaintiff should receive the same amount of water per acre for the irrigation of his lands as fixed by the state engineer and desert land board in the construction contract. There may be a slight difference between one-eightieth of a second-foot per acre for the season and three acre-feet. This provision, however, has sometimes been changed by the desert land board in carrying out the Carey Act project, but we are not aware of any change in the present instance. In this respect we think that the decree of the circuit court, as to the duty of water, should be modified to conform to the contract. It will be so ordered, making the duty of water for plaintiff's 258.5 acres of land one-eightieth of a cubic foot of water per second of time, measured at the head of plaintiff's service lateral or ditch for each acre of said land.

■ The contract of plaintiff also provides that plaintiff ''shall bear the same relation to such irrigation system * * * as other purchasers of water rights in said irrigation system.'' A careful consideration of the language of this contract and all of the facts and circumstances pertaining to the various arrangements leads us to believe that plaintiff's contract provides in effect that he shall pay the same maintenance fees as do adjoining water users in the system. A water

right appurtenant to the land passes therewith and does not provide for a perpetual maintenance of the reservoir, canals and ditches conveying such water. Taking the language of the contract, together with the conditions and customs prevailing, we think that irrigation maintenance fees should be paid by the plaintiff. In case of dispute in regard thereto, the right is reserved in this suit and is referred to the circuit court to fix such maintenance fees. The plaintiff, during the time he used the water, paid the irrigation district, as he supposed, maintenance charges. As the district claims, it was a sale of the water. It may be unnecessary for us to make this provision, but we deem it appropriate.

With the slight modification mentioned, the decree of the circuit court will be affirmed. In view of the fact that there is practically little change in the decree, plaintiff will be allowed costs in this court.

Affirmed with modification.

Rossman and Kelly, JJ., not sitting.

Petition for rehearing denied October 6, 1931

On Petition for Rehearing

(3 P. (2d) 534)

BEAN, C. J. In a petition for rehearing attention is called to the matter of the duty of water pertaining to the right of plaintiff, William Skinner, which was fixed in our former memorandum opinion for 258.5 acres of land, as one-eightieth of a cubic foot of water per second of time, measured at the head of plaintiff's service lateral or ditch for each acre of said land. The quantity of water was further limited by the length of the irrigation season.

As stated in our former opinion, the duty of water, under the contract dated February, 1918, between Skinner and the Jordan Valley Land and Water company, was to be fixed by the contract between the construction company and the desert land board.

To fully carry out the intent of our former opinion, the paragraph pertaining to the duty of water, in the latter part thereof, will be modified so as to read as follows:

The trial court fixed the duty of water for plaintiff as three acre-feet for the season, while, as we have noted, the contract provided that the plaintiff should receive the same amount of water per acre for the irrigation of his lands as fixed by the state engineer and desert land board in the construction contract. There may be a slight difference between one-eightieth of a second-foot per acre for the season and three acre-feet. This provision, however, has sometimes been changed by the desert land board in carrying out the Carey Act project, but we are not aware of any change in the present instance. In this respect we think that the decree of the circuit court, as to the duty of water, should be modified to conform to the contract. It will be so ordered, making the duty of water for plaintiff's 258.5 acres of land one-eightieth of a cubic foot of water per second of time, measured at the head of plaintiff's service lateral or ditch for each acre of said land; provided that water shall not be wasted and that no water user shall receive more water than is actually required for the proper irrigation of his land, and in no event more than two and one-half acre-feet per acre during the irrigation season and one-half acre-foot per acre for domestic and stock purposes during the nonirrigating season.

This additional provision is contained in article VII, section 1 of the contract mentioned with the desert land board.

We have carefully considered the brief on petition for rehearing in all other respects, and after digesting its contents we find that it seeks to place plaintiff, William Skinner, who owns land outside of the irrigation district, in the same position as the owners of land within the irrigation district who have made contracts subsequent to the plaintiff's contract, which substantially superseded their former contracts. The plaintiff refused to enter into an additional contract, and, as we have already indicated, he should not be compelled to make such contract. The fact that the construction company failed to carry out their contract with Skinner was not the fault of the plaintiff. They had constructed works and a reservoir with considerable water therein, and, in common parlance, the matters pertaining to plaintiff's water right were left somewhat "in the air."

18. It is the duty of a court of equity to construe the construction company's contract with plaintiff, broken on the part of the construction company, under the conditions as we find them expressed in the various contracts, which we have endeavored to do.

With the above-mentioned modification, the petition for rehearing is denied.