Argued at Pendleton May 4; affirmed June 2; rehearing
denied July 7, 1936

# JORDAN VALLEY IRRIGATION DISTRICT *v.* TITLE & TRUST COMPANY

(58 P. (2d) 606)

*C. B. McConnell,* of Burns, and *J. L. Eberle,* of Boise, Idaho (Richards & Haga, of Boise, Idaho, on the brief), for appellant.

*C. M. Crandall,* of Vale, and *Ralph Hamilton,* of Portland (C. M. Crandall, of Vale, and Bronaugh,

Hamilton, Bynon & Bronaugh, of Portland, on the brief), for respondent.

BEAN, J. We recite a portion of the opinion of Circuit Judge Wood, to show the character thereof. These lands are situated in the Jordan Valley Irrigation District in Malheur county, Oregon, and the delinquent taxes thereon were levied by the plaintiff for the years 1924, 1926, 1927, and 1928 against one Frank Rios. About June 2, 1932, the plaintiff purchased delinquency certificates Nos. 5610, 5611, 5612, and 5596 issued against said lands for said taxes. The total amount involved is about $695. The application is in the usual form and was filed on June 15, 1932.

The defendant filed an answer to the application in which it admits the corporate character of the parties and alleges that it purchased the taxed premises from Frank Rios in February, 1932, and has owned the same ever since. Defendant then alleges that in October, 1907, Frank Rios owned and used a water right for the irrigation of said lands out of Antelope, Canter, Coyote and Jack creeks, with a reservoir site and ditch, and irrigated his said lands by means of said system. On October 23, 1907, he sold said water right and system to Joseph M. Dinwiddie, A. B. and Antone Azcuenaga, who, as a consideration for the sale, agreed to furnish said Rios with a perpetual water right for 140 inches of water, miner's measurement, under a four-inch pressure, with an impounding dam, and a ditch to convey said water to said lands. This agreement was evidenced by a writing which was twice recorded in the county records of Malheur county. The contract, known in the record as Exhibit A, is as follows:

"Know All Men by These Presents: That I, Frank Rios, the party of the first part, for and in the con-

sideration of a perpetual water right of (140) miner's inches of water under a (4) inch pressure, and one-half mile of ditch (that will carry the said water) to the southwest corner of SE ¼ of the NW ¼ of Sec. 32, Twp. 30 S. R. 45 E. W. M. The said water is to be used on the said Frank A. Rios' desert land entry described as follows: SE ¼ of the SE ¼ of Sec. 30, and the NE ¼ of the NE ¼ of Sec. 31, and the W ½ the NW ¼ of Sec. 32, all in Twp. 30 S. R. 45 E. W. M. And a further consideration of that a dam is to be built (fifteen feet in height) to supply the said water for the water right, and if the dam when completed to that height does not or will not supply the said one hundred and forty inches of water, the said Frank A. Rios is to have all of the water that the dam furnishes.

"And in consideration of the foregoing the said Frank A. Rios the party of the first part, does by these presents grant, bargain, relinquish his right and title to his water right in Antelope, Canter, Coyote, and Jack Creeks, and a reservoir site in the SE ¼ of the SE ¼ of Sec. 32, Twp. 30 S. R. 45 east of W. M. and a right of way through the main channel of Antelope on his place to be used as a ditch, to Joseph M. Dinwiddie, A. B. Azcuenaga and Antone Azcuenaga, the parties of the second part.

"It is agreed by the parties of the second part that if the dam should break or be washed out that they will rebuild the same.

"It is agreed by the parties of the second part that the dam and ditch for the party of the first part is to be completed by March 1st, 1909.

"In witness Whereof, the said parties to these presents have signed hereto, and to one other of like tenor and date, this 23rd day of October, 1907. Antonia Azcuenaga, L. S. J. M. Dinwiddie, L. S. Frank A. Rios, L. S."

It is alleged that the parties to said contract afterwards abided by its terms and conditions. The defendant then alleges that in 1922 the plaintiff district

succeeded to the rights of Dinwiddie and the Azcuenagas under said purchase and sale agreement and recognized the rights of Rios thereunder for one or two years, and then demanded of Rios that he should pay annual charges for the upkeep and maintenance of plaintiff's irrigation project. Rios refused to pay these charges, claiming that under his said agreement he was to be supplied with water without any cost or charge. It is then alleged that the tax liens sought to be foreclosed in this suit arose out of and are for taxes levied by the plaintiff district for annual water charges claimed to be due the district for the various years represented by said certificates of delinquency. It is alleged that under said purchase and sale agreement the said Frank Rios and his successor in interest, this defendant, are not liable for said taxes and the same were illegally levied and are void, and that the plaintiff, as successor of Dinwiddie and the Azcuenagas had knowledge of said facts before said taxes were levied. Defendant claims that under said agreement the plaintiff district is obliged to furnish water free of charge for the irrigation of defendant's said lands; that there is nothing due the plaintiff from the defendant by reason of the attempted tax charges set out in the foreclosure application, and that said alleged taxes are not a lien on defendant's lands.

Defendant then sets up a further and second defense in which it realleges and sets out all of the matters and things alleged in the first defense and then sets out the proceedings had in the foreclosure suit brought in said court on November 15, 1930, by the Title and Trust Company, as plaintiff, against Frank Rios, Provident Investment Company, a corporation, Jordan Valley Irrigation District, a municipal corporation,

Malheur county, Oregon, a municipal corporation, Quinn River Bank, a banking corporation, also other unknown persons who have or claim to have some title, estate, lien or interest in the property described in the complaint herein, as defendants. That suit was brought to foreclose a mortgage given by Frank Rios on October 31, 1923, to the assignor of the Title and Trust Company on the same lands, water rights and water system that are described in defendant's first answer. In that suit the same purchase and sale contract, Exhibit A, was annexed to the complaint. It then sets forth the issuance and service of the summons on all the defendants in that suit, and, as none of them appeared or answered, a default was duly entered in the court.December 30, 1930. Thereupon findings and decree in favor of plaintiff and against defendants were duly made by the court and entered on December 31, 1930. Among other things, it was adjudged by the court that any right, title, estate, lien or interest claimed or asserted by the defendants in said mortgaged premises was subsequent in time and inferior to and subject to the lien of plaintiff's mortgage, and defendants were restrained and enjoined from asserting any lien, estate or interest in said premises adverse to the plaintiff. Thereafter the said premises were sold at sheriff's sale on execution under said decree and were bought by the Title and Trust Company. This sale was duly confirmed by the court and thereafter the purchaser obtained a sheriff's deed to said property, which deed was duly recorded.

Defendant in the present suit contends that the proceeding and judgment in said foreclosure suit actually litigated and determined all the issues tendered in the present suit and that said judgment

is a bar to the prosecution of the present suit, and that plaintiff is precluded and estopped by said judgment from maintaining this suit. This contention was denied by the trial court.

The defendant further petitions the court to enter a declaratory judgment declaring the rights, title and other legal relations existing between the Jordan Valley Irrigation District and the Title and Trust Company concerning the duty of the district to furnish irrigation water to the lands of the company free of charge.

To this answer the plaintiff filed a reply which in effect denies all the affirmative allegations of the answer, and further alleges that plaintiff's irrigation system was a Carey Act project constructed by the Jordan Valley Land and Water Company; that said company was adjudged a bankrupt by the United States District Court for the District of Idaho, Southern Division, and said irrigation system was sold by order of said bankruptcy court; that said company violated its contract with the state of Oregon; that the state forfeited the interests of said construction company in said system, and that plaintiff acquired said system from the state of Oregon and obtained a relinquishment of the rights of the trustee in bankruptcy and assumed no obligations whatsoever with reference to the defendant herein, or to Frank A. Rios.

Plaintiff further contends that the purchase and sale agreement, Exhibit A, was not signed by all the parties named therein, and that the same was not sealed, witnessed or acknowledged, and is not entitled to record and is indefinite and uncertain in its terms and insufficient to give notice to subsequent purchasers or interested parties.

Plaintiff further says that it was not a necessary or proper party defendant in the mortgage foreclosure suit set up in the answer and that plaintiff is not concluded by the decree rendered therein and that the issues in the case were not litigated in said foreclosure suit.

Plaintiff also claims that defendant is estopped to question the tax levy set up in the complaint because it failed to appear before the Board of Equalization to object to the levy of said taxes.

Plaintiff also contends that this is not a proper or necessary case for the entry of a declaratory judgment on the matters set up in the pleadings, for the reason that full relief can be entered under said pleadings without such a declaratory judgment.

Defendant contends that the assessment and levy of taxes set forth in the complaint are void on account of certain irregularities in the description and location of some of the property taxed, the amounts of the assessments, the meetings of the levying board of directors of the district, etc.

The circuit court held that in the state of Oregon the presumptions are all in favor of the validity of the tax and the law especially enjoins the court to disregard errors, irregularities and informalities in the proceedings to levy and collect taxes, citing sections 48-801, 69-820 and 69-806, Oregon Code 1930; that if the property was subject to district taxation at all, that being the principal question in the case, the legal formalities to support the levying of the taxes were sufficiently complied with, and he overruled the contention of defendant on this branch of the case. He further held that the lien of taxes properly assessed and levied on real property in the state of Oregon (other

than mortgages held by the state land board) is superior to any mortgage held thereon by private persons and that this rule applies to taxes lawfully levied by an irrigation district, citing sections 69-722, 48-801 and 48-806, Oregon Code 1930; *Wyman v. Noonday Mining Co.,* 100 Or. 211 (197 P. 289).

The learned circuit judge stated that the question of judgment and decree being a bar to the maintenance of the present suit is not an open question in the state of Oregon; that it was settled adversely to the defendant by an opinion of the supreme court in the case of *Barnes v. Anderson,* 108 Or. 503 (217 P. 836), and cases there cited, and quotes from that opinion.

All of the above facts, and many additional, were stated in Judge Wood's opinion, which consisted of over 20 pages of printed matter.

This proceeding was heard before the Honorable W. W. Wood, as judge of the Ninth Judicial District, on July 6, 1933. The testimony was taken in shorthand, and the exhibits, including the contracts in question and an opinion by Judge Wood, stating practically all the facts, were filed in the case. Judge Wood died before the decree was rendered, and Judge Ellis, his successor, took the opinion, changed the heading of the opinion, followed it almost verbatim and signed it as findings of fact, and, on March 27, 1935, rendered a decree accordingly. The opinion settled the issues and directed the kind of decree to be entered. The testimony was not transcribed until June 5, 1935. We find no objections in the record, on behalf of the plaintiff, to the proceedings taken by Judge Ellis. The plaintiff assigns that it was error for Judge Ellis to make and enter findings of fact and conclusions of law and judgment and decree in the case.

Counsel for appellant refer to 33 C. J. 973. We find at page 972, § 102, the following:

"Since a court retains its identity regardless of a change of its functionaries, generally, * * * the judicial powers and duties of a departing judge, as part of the court, devolve upon his successor; and this rule applies to unfinished business or unperformed duties, for a judge whose term of office has expired cannot subsequently perform any judicial function. * * *"

Section 103 is in regard to rendering and signing the judgment, order, or decree in a cause heard by a predecessor, and reads:

"Although there is some authority to the effect that, where a trial without a jury has been fairly had, but the judge retires from office before giving judgment, his successor may, after hearing argument and without hearing further testimony, render judgment, and that in a contested case, where the testimony may be taken by a referee or master, a judge of a court, succeeding a predecessor who sat when the testimony was taken, may use it in determining the question presented in the contest, ordinarily, in the absence of authority of law, while a succeeding judge may adopt the findings of fact made by his predecessor and render judgment thereon, and while, where the order of a judge has disposed of all the issues in a cause, his successor may enter final judgment therein, notwithstanding a statute prohibiting a judge from acting in any matter where he was not present and sitting as a member of the court at the hearing thereof, where a case is tried by the judge, and the issues remain undetermined by him, his successor cannot decide or make findings in the case, without a trial de novo; * * *"

■ Judge Wood's opinion did not mention 31/100 of an acre located in the Southeast Quarter of the Southwest Quarter of section 32, as shown by the applications and answer herein, and which was embraced in the de-

cree. The opinion is a determination of the suit and it constitutes findings of fact and is a direction for entering a decree in the suit. We think the successor to Judge Wood was authorized to sign the findings of fact and decree. Moreover, the testimony in the case was taken by a reporter in shorthand notes, and Judge Ellis, for all that appears, may have had the reporter read the notes. Whether he did so or not is not shown in the record.

In *Case v. Fox*, 138 Or. 453 (7 P. (2d) 267), findings of fact and conclusions of law were made and signed by the late Judge John H. Stevenson in an action tried by the court without a jury. Objections to the findings made by Judge John H. Stevenson were interposed. Judge Louis P. Hewitt, Judge Stevenson's successor, after having heard the arguments of counsel and examined the objections to the findings of fact and conclusions of law and the records, signed the judgment which was upheld by this court. At page 458 of that volume, Mr. Justice Rossman states:

"The findings of a judge settle the issues of fact as conclusively as the verdict of a jury (section 2-503, Oregon Code 1930, and Burke Machinery Co. v. Copenhagen [138 Or. 314] (6 P. (2d) 886). Such being true, Judge Hewitt was as fully authorized to enter a judgment based upon the findings of fact and conclusions of law bearing Judge Stevenson's signature as he would have been to render a judgment based upon the verdict of a jury which had sat in Judge Stevenson's department: Hazard v. McAndrews, 18 Wash. 392 (51 P. 1064)."

Judge Wood's opinion was filed with the clerk of the circuit court of Malheur county. Plaintiff's petition for reconsideration was filed thereafter, and

Judge Wood signed and filed an opinion on the petition for reconsideration. While the opinion of Judge Wood was not entitled Findings of Fact and Conclusions of Law, the opinion very plainly states all the necessary facts and determines the case. We think the question in the case is, Is the decree of Judge Ellis correct? It would have been a work of supererogation for Judge Ellis to have again taken the testimony and rendered an opinion, the same as Judge Wood had done.

██ On April 11, 1918, a contract was entered into between the Jordan Valley Land and Water Company, a corporation organized under the laws of the state of Nevada and doing business in the state of Oregon under and in compliance with the laws thereof, party of the first part, and Frank Rios of Jordan Valley, party of the second part. After reciting that the party of the first part was owner of an irrigation system and describing the sources from which the water was taken, and that the party of the second part was owner of certain lands located westerly from the Antelope Reservoir of said reclamation system, particularly describing the lands, a portion of which is described in the agreement, Exhibit A, the party of the first part agrees to grant, bargain, sell and convey, and does grant, bargain, sell and convey to the party of the second part a water right in the said irrigation system of the Jordan Valley Project to the extent of one-eightieth of a cubic foot of water per second for each acre of land in the above described tracts owned by the party of the second part, which can be irrigated by gravity from the canals leading from the Antelope Reservoir of the said Jordan Valley Project "now being constructed or to be constructed by the party of the first part amounting to a total net irrigable area of not to exceed one

hundred and fifty (150) acres''. The agreement provides:

"that the said water right granted and sold to the party of the second part by the party of the first part and the acceptance and the use thereof by the said party of the second part shall not in any manner injure, destroy or impair the now existing rights of either of the said parties to the use of the waters of Jack, Coyote, Canter and Antelope Creeks, which said creeks supply water to the Antelope Reservoir.''

It was agreed that in case an operating company was organized pursuant to the requirements of the State Desert Land Board for the purpose of taking over title to and the management and control of the irrigation system,

"the party of the second part shall accept and be entitled to a certificate of stock for the same number of shares of stock in the said operating company as there are irrigable acres in his land above described that can be watered by gravity from the canals of the said system, each of which shares of stock shall represent the amount of water right that may be fixed by the State Engineer or the State Desert Land Board, of the State of Oregon, in any contract that may be entered into between the State of Oregon and the party of the first part for the irrigation and reclamation of certain lands situated under said irrigation system and now being segregated from the public domain under the Act of Congress commonly known as the 'Carey Act', to the end that the party of the second part shall bear the same relation to such irrigation system and receive the same amount of water per acre as every other purchaser of water rights in the said irrigation system, *excepting that all rights now existing and held by either of the said parties to the use of the water of Jack, Coyote, Canter and Antelope Creeks shall not in any manner be impaired, injured or destroyed by the acceptance of this agreement by the said party of the second part.''* [Italics ours.]

The party of the second part agreed to grant, bargain, sell and convey, and did grant, bargain, sell and convey to the party of the first part, its successors and assigns, a free right of way over the above described land owned by the party of the second part for a certain canal of the Jordan Valley Project, particularly described as "a right of way through the channel of Jack creek running in a northwesterly direction from the Antelope Reservoir", and prescribing the width of the canal.

It is plain that this agreement did not impair the then existing rights of either of the parties to the use of the water to the creeks described or change the original contract, Exhibit A. The Jordan Valley Land and Water Company desired an additional right of way along Jack creek, which was conveyed by Rios. Evidently it was more convenient in the administration of the ditch or canal to describe the water used by Rios as a fraction of a cubic foot per second, the same as the other water users, instead of by miner's inches, which is not an exact measurement. Therefore the contract was executed. Frank Rios had a definite and certain water right from that source which existed ever since the making of the agreement, Exhibit A, and the two provisions contained in Exhibit E to the effect that they would not change the rights of the parties under the former contract are as plain and clear as can be made. These exceptions or reservations were thereby recognized and acknowleged. Hence it is necessary to consider what water rights Frank Rios reserved or was granted in the agreement known as Exhibit A. We first notice that he was to have a perpetual water right, 140 miner's inches of water under a four-inch pressure, and one-half mile of ditch that would carry said water

to the southwest corner of the southeast quarter of the northwest quarter of section 32, to be used upon his desert land entry.

There was a further consideration that a dam was to be built 15 feet in height to supply the said water right, and if the dam, when completed to that height, would not supply the said 140 inches of water, Frank Rios was to have all of the water that the dam furnished. In other words, he was to have a prior right to the water from the dam or reservoir as a consideration for relinquishing his rights and conveying the right of way.

As we understand it, the matter stands in effect in the same condition as though Frank Rios had conveyed the right of way along the main channel of Antelope creek and relinquished certain water rights, saving and excepting and reserving the water right of 140 inches under a four-inch pressure to be delivered at the southwest corner of the 40 acres described, by means of the one-half mile of ditch mentioned.

The agreement indicates that Rios was to have the perpetual water right carried to his land free of expense. Prior to the agreement Rios had this water system and evidently could maintain the same with very little expense. By the conveyance of the right of way and the relinquishment of certain portions of his water right, which was absolutely necessary for the construction of the reservoir and water system, Dinwiddie and the Azcuenagas were required, according to the terms of the agreement, to so provide Rios with the use of the water free or without expense of maintenance and operation. For a long time the agreement was so construed and acted upon by the parties, which is very significant. They knew at that time what was really intended. Rios used the water, according to the

terms of the contract, for more than ten years, which would confirm his right. If there is any maintenance or upkeep for Rios or his successors in interest to bear, it would be on "the one-half mile of ditch (that will carry the said water) * * *". While the agreement was evidently not drawn by a lawyer, we think the learned trial judge correctly construed the same.

It is held in the case of *Skinner v. Jordan Valley Irri. Dist.*, 137 Or. 480, 489 (300 P. 499, 3 P. (2d) 534):

"The irrigation district purchased the irrigation system from the receiver in bankruptcy for the consideration of some $35,000, and also contracted with the state to complete the construction of the Carey Act system. The district, by so doing, took the water system, including the reservoir and ditches and canals, subject to outstanding contracts, and it is required to perform the obligations of such contracts, and takes the property burdened with the right, easement and servitude which the construction company had conveyed to plaintiff." Citing 3 Kinney on Irrigation and Water Rights (2d Ed.) 2736, § 1520; *In re Deschutes River,* 134 Or. 623 (286 P. 563, 294 P. 1049); *In re Willow Creek,* 119 Or. 155 (236 P. 487, 763); *Smith v. Willis,* 84 Or. 270 (163 P. 810); *Stanislaus v. Bachman,* 152 Cal. 716 (93 P. 858, 15 L. R. A. (N. S.) 359); *Allen v. Railroad Commission,* 179 Cal. 68 (175 P. 466, 8 A. L. R. 249); *Edinburg Irr. Co. v. Paschen,* (Tex.) 235 S. W. 1088.

It is contended on the part of plaintiff, in accordance with the holding in the case of *Skinner v. Jordan Valley Irri. Dist.*, supra, that Frank Rios and his successors in interest were required to pay operation and maintenance charges under the agreement, Exhibit E. The Skinner contract contained no such provision as was contained in the contract, Exhibit A, nor the provi-

sion that "excepting that all rights now existing and held by either of said parties to the use of the water of Jack, Coyote, Canter and Antelope creeks, shall not in any manner be impaired, injured or destroyed by the acceptance of this agreement by the said party of the second part. (Frank Rios)" The Skinner contract was not supplemental to such a contract as shown by Exhibit A executed by Frank Rios and Dinwiddie and the Azcuenagas, which provides for a perpetual water right.

Plaintiff argues that Rios' contract with the Jordan Valley Land and Water Company, Exhibit E, superseded the original contract, Exhibit A. With this contention we are unable to agree. We are satisfied that the contract, Exhibit E, did not change the main provisions of the contract, Exhibit A. We believe that water contracts usually provide for selling water rights and for the compensation to be paid for maintenance. No provision for maintenance is made in the contract, Exhibit A. A small portion of the water right in question depends upon the contract known as Exhibit E. It is stated that this is not pleaded. Nevertheless, in order to settle the matter fully this small amount of water for the land should be settled in the present case. Water suits are sui generis and pleadings in such cases are not very strictly construed: *Hough v. Porter*, 51 Or. 318, 439 (95 P. 732, 98 P. 1083); *In Re Waters of Deschutes River*, 134 Or. 623, 706 (286 P. 563, 294 P. 1049).

As shown by Rios' contract, Exhibit A, he was granted, or had reserved, the water right and a half mile of ditch to convey the same to his land. If he should be required to pay maintenance charges, which are usually by far the larger part of such assessments,

what is the necessity of his having a half mile of ditch to convey the water to his land? Each part of the two contracts should be given the meaning intended. There is but little difference in principle, as we see it, in requiring Rios or his successors to pay maintenance charges and payments on the bonds and interest. All the benefit that Rios obtained by the contract, according to the plaintiff's construction, was that he would get water later in the season than he had theretofore, and was relieved from paying bond and interest assessments. Undoubtedly the former constructors of the Antelope Reservoir and system, Dinwiddie and the Azcuenagas were very glad to give Rios, or allow him to retain, the water right and a half mile of ditch to convey the same to his lands, about 88 acres, in consideration for the right of way for the reservoir, dam and ditch or canal. It was for them to make the contract and not for the court.

6. Plaintiff submits that the delinquency certificates involved are final inasmuch as no appearance was made before the Irrigation District Board of Equalization and no appeal was taken. The statute, we think, governs this question. Section 69-806, Oregon Code 1930, as amended by chapter 336, Laws of 1935, provides that such certificates of delinquency shall be prima facie evidence that:

"1. The property described was subject to taxation at the time same was assessed.

2. The property was assessed as required by law.

3. The taxes or assessments were not paid at any time before the issuance of the certificate.

4. Such certificates shall have the same force and effect as a judgment execution and sale of and against the premises included therein."

The answer in this case makes a direct attack upon these certificates of delinquency. It is not a collateral attack. The defendant has the right to contradict the prima facie evidence contained in the certificates of delinquency and contends, and the testimony shows, that the property described was not subject to taxation at the time the same was assessed; that the prima facie evidence that the taxes or assessments were not paid at any time before the issuance of the certificate is incorrect. Rios had a paid-up water right. In the reply brief of the learned counsel for plaintiff, at page 50, we find this language:

"However, the universal rule in the reclamation states has been that a free or perpetual or paid-up water right does not in the absence of any express agreement to the contrary pass the burden of maintenance on to the grantor, * * *."

We think that counsel properly used the words "free or perpetual or paid-up" as synonymous. These certificates of delinquency may be attacked directly in a suit in equity the same as a decree or judgment which may be attacked directly but not collaterally.

■ If Rios and his successors in interest had a paid-up water right, or a right analogous to a paid-up water right, as we hold that they did, then the property was not subject to taxation or assessment and the assessments were legally paid.

■ Defendant Title and Trust Company, pleading affirmatively, and setting forth the facts, respectfully petitioned the court that it make and declare the rights, status and other legal relations now existing by and between the said Jordan Valley Irrigation District and the said Title and Trust Company, and that the

court make and enter its declaratory judgment and decree, as prayed for, such declaration to be either affirmative or negative in form or effect, and that such declaration shall have the force and effect of a final judgment and decree, under the provisions of sections 2-1401 and 2-1416, Oregon Code 1930. Section 2-1401 provides:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceedings shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The dèclaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree."

Pursuant to the petition and the facts set forth therein, Circuit Judge Ellis rendered a declaratory judgment and decree, *inter alia*, in substance as follows: That the duty of water to be furnished and supplied is fixed at one-eightieth of a cubic foot per second, per acre, measured at the head of defendant's service lateral, (which we understand is at the corner of the 40 acres mentioned in the contract); that plaintiff is bound to rebuild and replace the dam constructed by Joseph M. Dinwiddie, A. B. Azcuenaga and Antone Azcuenaga, as a reservoir to store water for use upon said lands if, at any time, or for any reason, said dam should break or be washed out.

Plaintiff complains because the decree requires it to so construct the dam. The contract quoted above plainly shows that plaintiff's predecessor in interest, if the dam should break or be washed out, should rebuild the same. It is appropriate that it should be

so declared in the declaratory judgment, in order to save further litigation.

The decree of the circuit court is affirmed.

Defendant will recover costs and disbursements in the circuit court as therein decreed. As it was in the interests of both parties that the matters involved herein be finally adjudicated, neither party will recover costs in this court.

CAMPBELL, C. J., and RAND and KELLY, JJ., concur.